## NEW YORK SUPERIOR COURT.

In the Matter of WILLIAM H. DOBBS, a minor.

It is within the power and the duty of *state courts or judges* to give a detained party enlisted under the laws of the United States the benefit of a *habeas corpus*; and upon proper evidence, to discharge him from such enlistment.

Although the act of Congress of the United States, of September, 1850, (§ 5,) directs "that it shall be the duty of the secretary of war, to order the discharge of any soldier of the army of the United States, who, at the time of his enlistment was under the age of twenty-one years, upon evidence being produced to him that such enlistment was without the consent of his parent or guardian," it must be considered merely as a *concurrent power*, conferred upon such officer, with the state courts. (*This is adverse to the decision in Phelan's case,* 9 *Abb.* 286.)

The *minor* must have a parent or guardian whose authority was recognized as valid by the law of the place, who had authority to consent or forbid, and to whom the recruiting officer might have applied within the United States for his assent in writing to the proposed enlistment, to authorize his discharge on that ground.

ON *habeas corpus.*

JONAS B. PHILLIPS, *for petitioner.*
THEODORE HINSDALE, *for United States.*

HOFFMAN, Justice. Upon *habeas corpus*, the return of an officer of the United States army is, that the party detained was enlisted in the army of the United States, on the 28th day of March last, for the period of five years; had received advance, clothing, &c., to the value of $39.

Henry Dobbs, being examined upon this return, deposed that he was the father of the party detained; that his son was a minor, having been born on the 26th of February, 1841; and that he had not given his consent to the enlistment in any form or manner whatever; and also, that he, the father, was a citizen of the United States, domiciled in Newark, New Jersey.

On these grounds the discharge of the party is applied for.

Congress has power, under the constitution, to raise and support armies (*article* 1, § 8, *sub.* 11,) and "to make rules

for the government and regulation of the land and naval forces" (*Id.*, *sub.* 13,) and generally " to make all laws which shall be necessary and proper for carrying into execution the foregoing powers."

By the 11th section of the law of Congress of the 16th of March, 1802, (*vol.* 2, *Statutes at Large*, *p.* 134,) entitled " An act fixing the military peace establishment of the United States," after declaring that the recruiting officers should be entitled to receive for every able-bodied citizen who should be enlisted for five years, between the ages of eighteen and thirty-five years, the sum of two dollars, enacted as follows : " Provided, that no person under the age of twenty-one years shall be enlisted by any officer, or hired in the service of the United States, without the consent of the parent, guardian or master first had or obtained, if any he have.". It proceeds to impose a penalty for violating this provision.

An act of April 12, 1808, (although considered obsolete, apparently expired by the limitation of the term of service provided in it,) may be usefully referred to. By section five, (2 *Statutes at Large*, *p.* 481, 483,) the provisions of the act of 1802, " fixing the military peace establishment of the United States," relating among other things, " to the regulation and compensation of recruiting officers, age, size, qualifications and bounties of recruits," were applied to all persons and things within the intent and meaning of said act, the same as if they were inserted therein at large."

The act of the 26th June, 1812, (*vol.* 2, *p.* 764,) " for the more perfect organization of the army of the United States," is referred to on account of its adoption in the next mentioned act. It does not itself contain anything pertinent to the present question.

By the act of January, 20, 1813, (*vol.* 2, *p.* 791,) entitled " An act supplementary to the act for the more perfect organization of the army of the United States," provided, in section five, that the recruiting officer should have a

bounty of $4 for every able-bodied citizen between eighteen and forty-five years, and then proceeded: "Provided that no person under the age of twenty-one shall be enlisted, or held in service in the United States, without the consent in writing of his parent, guardian or master first had and obtained, if any he have."

The act of January 29, 1813, to raise an additional military force, (*vol.* 2, *p.* 794,) to raise twenty regiments for one year, contained precisely the same provision, (§ 7.) This act has become obsolete.

A further act was passed on the 10th of December, 1814, "making further provision for filling the ranks of the army of the United States," (*vol.* 3, *p.* 146.) The first section authorized the enlistment of any able-bodied men between the ages of eighteen and fifty years; which enlistment shall be absolute, and binding upon all parties under the age of twenty-one years, as well as upon persons of full age, such recruiting officer having complied with all the requisitions of the laws regulating the recruiting service."

By § 2, the recruit had four days to reconsider and withdraw his enlistment.

By § 3, so much of the 5th section of the act of 20th January, 1813, as requires the consent in writing of the parent, guardian or master, to authorize the enlistment of persons under the age of twenty-one years, was repealed.

The act was passed before the peace was known in the United States.

Then followed an act of the 3d of March, 1815, entitled " An act fixing the military peace establishment of the United States." By § 1, the military peace establishment shall consist of such proportions of infantry, &c., not exceeding ten thousand men, as the president should judge proper.

By the 7th section, " the several corps authorized by the act shall be subject to the rules and articles of war, be recruited in the same manner and with the same limitations as are authorized by the act of 16th March, 1802, entitled.

"An act fixing the military peace establishment of the United States," and the act of 12th April, 1808, entitled "An act to raise for a limited time an additional force;" the bounty to the recruiting officer was to be the same as it was by the act of April 12, 1808.

I cannot but conclude that, by force of this section of the act of 1815, the provisions of the act of 1802, were restored as to the necessity of a consent by the parent, and restored in the language of that act.

The editor of the edition of the Statutes at Large, (Mr. Peters,) considers the act of December 10, 1814, to be repealed by this act of 1815, (marginal memorandum.) It probably is so, by the comprehensive provisions upon the same subject in the latter act.

Mr. Ingersoll, in his digest of 1821, obviously considered the act of 1802, as then in force upon this subject.

In an act of July 5, 1838, (*vol.* 5, *p.* 256,) "to increase the military establishment of the United States," it was enacted in section 30, "that so much of the 11th section of the act of 16th March, 1802, and so much of the 5th section of the 12th April, 1808, as fix the height of enlisted men at five feet six inches, be repealed." This raises a strong if not unanswerable argument that the rest of such sections continued then in force.

I have not found any other statutory provision which bears upon the question until the enactment of 28th of September, 1850, hereafter noticed.

Whatever doubts Chief Justice KENT, and Justice STORY, entertained of the right of state courts or judges to hold jurisdiction of the matter, (*see* 1 *Mason*, 86; 9 *John. R.*, 236,) our supreme court explicitly and fully recognized the power and the duty of the state judges to give a detained party enlisted under the laws of the United States the benefit of a *habeas corpus*. In the matter of *Carlton*, (7 *Cow.*, 471, 1827,) the courts declare that the enlistment of a minor without consent of his parent or guardian was void

under the act of Congress, and he might be discharged by state authority.

: This doctrine has been acted upon by judges of this state from that time to the present. Indeed, it seems difficult to escape from the imperative force of our own statute as to the writ of *habeas corpus* and the obligation to issue it. (*See* 3*d R. S.*, 563, §§ 21, 26, 30.)

Thus it seems to me the duty of considering the question as within our jurisdiction, and the duty to discharge the prisoner on the facts in this case, if clear, unless the statute of September 28, 1850, prescribes another determination.

. : That statute is entitled, "An act making appropriations for the support of the army for the year ending June, 1851," (*vol. 9, p.* 504.) The fifth section directs "that it shall be the duty of the secretary of war to order the discharge of any soldier of the army of the United States who, at the time of his enlistment, was under the age of twenty-one years, upon evidence being produced to him that such enlistment was without the consent of his parent or guardian."

. I am ready, as now advised, to concede the power of the Congress of the United States, to withdraw the consideration of cases of this description from the control of state courts or judges, and to prescribe the tribunals or officers to whom it shall be exclusively committed. But if the previous statements of the law in our state, independent of this statute, are correct, (and this is beyond dispute,) then I cannot understand how the mere conferring of a power in the matter upon one of the officers of the United States can abolish the right and duty of the state courts—can, indeed, be anything but a concurrent power.

In an opinion of Mr. Attorney-General Crittenden, of March 28, 1851, (*vol. 5 of opinions, p.* 313,) he considered that the secretary of war was not bound by the act of 1850, to discharge a minor who, at the time of enlistment, had neither parents or guardian; that the minor having a parent

Matter of Dobbs.

or guardian, and enlisting without consent, is not entitled during his minority to make proof and claim his own discharge. The parent or guardian must concur in the application. The law gives the enlisted minor no capacity to revoke the enlistment.

. Mr. Attorney-General Cushing (*vol.* 6 *of opinions, p.* 607,) considered that the secretary of war was not obliged under the act of 1850, to discharge minors on the application of a parent not domiciled in the United States.

The act of January 20th, 1813, that of the 10th of December, 1814, and that of 28th December, 1850, are the only statutes cited and commented upon by him. Taking the acts of 1813, 1814 and 1850 together, as being in *pari materia*, the proper conclusion seems to be that the minor must have a parent or guardian, whose authority was recognized as valid by the law of the place, who had authority to consent or forbid, and to whom the recruiting officer might have applied within the United States for his assent in writing to the proposed enlistment.

I have examined with great care, as well as respect, the opinion of Mr. Justice Hilton in *Phelan's case*, (9 *Abb.*, 286,) and which has been followed by Justice Brady, in the case of *Johnston*, and, as I am informed, by some other judges. For the reasons which are before stated, I am compelled to come to a different conclusion from that of the learned judges.

The recruit detained must be discharged.