## SUPREME COURT.

### In the matter of JOHN D. BESWICK.

Any *enlistment* of one, in the regular army or in the volunteer service, who has attained the age of *eighteen* years is regular and valid, and requires *no consent of natural or legal guardians*.

Where a recruit on his enlistment swears that he is eighteen years of age, the act of congress of February, 1862, declares that the oath shall be *conclusive as to his age*. But where it appears that the recruit was under eighteen years when he took the oath and enlisted, the act cannot be held to estop the master or parent who sets up a claim to the minor and a right to his services, from asserting it through the proper legal tribunals. The act is only conclusive as between the government and the recruit, in such case. (*This agrees with the case of Webb,* 24 *How.,* 247.)

An *infant* can, in law, make no binding *contracts,* and the government can only deal with him in subordination to the general principles of law, and in accordance with the rules it has itself prescribed. Inside of the age of eighteen years the government can make no contract with a recruit, and although a parent or guardian may *waive* his rights to the minor, and *as to the past be concluded,* the claim is not lost by *mere delay,* nor, perhaps, by any act which does not carry with it a *clear indication of consent and recognition, both past and prospective.*

Where *charges for desertion* have been preferred against a recruit, who has served in the army, and he is under arrest, awaiting the action of a court martial, the parent or guardian cannot make an application on *habeas corpus* for his discharge, and take him from the jurisdiction to which he has voluntarily subjected himself, on the ground that he is under eighteen years of age, and took a false oath when he enlisted. When the government has vindicated its authority, such an application may be sustained.

*At Chambers, Utica, June* 6, 1863.
ON habeas corpus.

A. M. BEARDSLEY, *for petitioner.*

BACON, Justice. The facts in this case, established in part by proof, and in part by the concession of the parties,

---

are substantially as follows : John D. Beswick was enrolled and mustered into the volunteer service of the United States for two years, as a private in the 26th regiment N. Y. V., at Rome, on the 14th of August, 1861. He then declared his age to be eighteen, and it was so entered on the muster roll, and he took the usual oath on his enrollment. He stated afterwards that he was not eighteen, but had determined to go into the service, and consequently made that declaration. He remained in this county but one day, and then went on to Elmira, and thence to Washington, joining the regiment there on the 23d of August.

He had a father and mother, both living at Utica at that time; and it is conceded that no written or verbal consent was obtained from either to his enlistment, nor does it appear that they had any knowledge of his enrollment. The father subsequently died while the son was in Virginia, and during his lifetime took no measures to obtain the discharge of his son. The latter remained with the regiment, in Virginia, until the 14th of September, 1862, when he left it without leave, and subsequently returned to Utica, where he remained with his mother for the space of some four months, and in March last was arrested as a deserter and sent back to the regiment, returning with it under arrest, and is now so held, and subject to be tried by a court martial for desertion.

He received pay as a private from time to time, the last payment having been made to and receipted by him on the first day of July, 1862, and from the wages thus received for his past services he sent $15 to his mother, which she received and applied to her own use. She now applies for his discharge, and it is made distinctly to appear that at the time of his enlistment he was only fifteen years of age, and that no written or other consent was obtained from his parents. His time of service will not expire, by the terms of his enlistment, until the month of August next, but it does not appear that his mother was ever apprised of the

period for which he had enlisted, at any time prior to this application for his discharge. After his arrest, he remained five days in custody in the jail at Utica, before he was sent back to the army. There are some other facts in the case, but they are not important, in view of the questions presented by it.

Upon these facts, I have arrived at the following conclusions, which I here indicate without elaborating:

1. If Beswick, at the time of his enlistment, had in point of fact been of the age of eighteen, the enlistment would have been in my judgment perfectly valid, without any consent whatever of his parents. The government of the United States has a right, whenever it thinks the exigencies of the country require it, to command the services of any of its citizens, and it is the sole judge of that necessity. If it so determine, it may enforce its right to command such service, and thus override the usual and legal claims of parents or guardians. The government may, under the authority of acts of congress, define the qualifications of those whom it calls into the service, and the age at which it is competent for them to enlist, and prescribe the duties of enrolling officers. It may make the consent of parents or guardians necessary for a valid enlistment, or may altogether dispense with such consent. In the army of the United States (as distinguished from the militia or the volunteer service) it was necessary until a very recent period that every recruit should be of the age of twenty-one years in order to render his own enlistment valid, and no one under that age could be enlisted without the consent *in writing* of either parent or guardian. In the volunteer service, however, there is no such restriction that I have been able to find. The subject of the qualifications and age of recruits has, by congress, been left to the discretion of the executive department, and the President has indicated and prescribed the age of eighteen as the minimum age from which enlistments could be made.

The rule which obtained in the army for many years, providing for the discharge of minors who had enlisted without the consent of parents or guardians, has now been abrogated by an act passed in February, 1862, by which that provision has been repealed, and it is enacted that no person *under the age of eighteen years* shall be mustered into the service of the United States. The rule, as I understand it, is now uniform in both branches of the service, the regular army and the volunteer service, so that it results that any enlistment of one who has attained the age of eighteen is entirely regular and valid, and requires no consent of natural or legal guardians. In the volunteer service, at any rate, such an enlistment is good.

2. The recruit in this case stated and swore on his enlistment that he was eighteen years of age. This to the recruiting officer seemed to dispense with the necessity of any inquiry after his parents, with a view to the procuring of their consent. How far is this oath conclusive, and does it estop any and all parties from thereafter alleging the contrary? The same act of February, 1862, declares that the oath of enlistment shall be conclusive as to the age. Effect can be given to this enactment by holding it to be conclusive as between the government and the recruit. He cannot be heard to allege the contrary, and the government must on its part recognize his position and rights. But it cannot, I think, be held to estop the master or the parent who sets up a claim to the person and a right to the services of the minor. He cannot by taking a false oath thus conclude those who make such a claim from asserting it through the proper legal tribunals. So it has been held by Judge Brown in the case of *Webb*, (24 *How.*, 247,) and I concur in his opinion.

3. It being now established that Beswick was only fifteen years of age when he enlisted, and there having been no express assent, can he now be held on the ground of an implied assent on the part of his parents to his continu-

ance in the service ? From what has been said, the conclusion results that his enlistment was invalid and might at any moment have been terminated by an application for that purpose. Have his parents, by delay, inaction, or the reception of a part of his wages, waived or lost their right to reclaim his services ? The question is not without difficulty ; and I believe it has been held in some cases, where the act of recognition of the relation of an enrolled recruit was very clear and decisive, that the parent was estopped from setting up the claim.

But in this case I am inclined to think the right has not been lost. After the enlistment of the minor he remained but a day in this county, and was so soon removed to the army, and kept there at such a distance, that no proceeding could well be taken and prosecuted without very great difficulty. The parents were poor, and very incapable of employing counsel to see to their rights, or advise them if they had any ; and perhaps it would be charitable to give them credit for more patriotism than has always been found in this community, and among those who might have been willing to aid them in withdrawing their son from the service of the country, so that for a season and at the time of our apparent great danger, they were, perhaps, willing he should contribute his aid to the defence of our periled institutions. The reception of a part of his wages by the mother is claimed as a strong act of recognition. It does recognize the act of his having earned them in the service, and would be a bar to any claim for the past, but is it to be construed as a ratification of the original act of enlistment and for the entire term ? It is like the act of a parent who has received a part of the compensation of a minor son earned by him in an employment to which the father did not originally consent. It is in law deemed so far an assent that the father cannot allege the invalidity of the contract as to the past, nor maintain any action for such services, or for an enhanced compensation. But does it preclude the parent from put-

ting an end to the contract for any future period, and insisting that it shall thenceforth, if he so elects, be terminated ? I take it not. A contract with the government is to be treated like a contract with an individual, and the same general rules apply to both. An infant can, in law, make no binding contracts, and the government can only deal with him in subordination to the general principles of law, and in accordance with the rules it has itself prescribed. It has through its authorized organs said that it can call for the services of its citizens at the age of eighteen, and has power at that age to make a valid enlistment. Inside of that age it can make none; and although a parent or guardian may waive his rights, and as to the past be concluded, the claim is not lost by mere delay, nor perhaps by any act which does not carry with it a clear indication of consent and recognition, both past and prospective.

I think the mother should not be held to have waived her right to present the claim, because she did not assert it when her son appeared and remained at home for some months after his desertion. It does not appear that she ever knew the period for which he had enlisted; and as she knew there had never been any consent to his enlistment, she might not unreasonably have concluded that he could be held no longer than he chose to stay, and could not again be compelled to serve in the ranks. Under the circumstances, a very stringent rule should not be applied to her, and I think she should not be denied the opportunity of at least presenting her claim.

4. If the case stopped here, the result would be pretty obvious, and I should have the not unpleasant duty of restoring the boy to his mother. But there is another feature that gives a different complexion to the matter and conducts me to another conclusion. It is conceded that Beswick left the regiment without license or authority of any kind, in other words was a deserter, and liable to be dealt with as such. If after the fact of desertion, and before arrest, this

application had been made, I am not prepared to say the mother might not have successfully urged her claim to the service of her son. But before taking out this writ, charges had been preferred against Beswick, and he had been actually placed under arrest, and was awaiting the action of a court martial now in session to adjudicate upon all such cases. If the application might have been made before all this took place, it is now, I apprehend, too late. As between the recruit and the government, we have seen that the enlistment was lawful. He cannot, as against any claim the government may assert, interpose his non-age, because on that point his mouth is closed by the oath he took upon his enlistment. He voluntarily undertook to serve the government, and he owed it duty and obedience to the end of his term, while the government owed him the corresponding duty of protection, sustenance and pay, and all this it performed while he remained at his post. His desertion was consequently entirely unjustifiable, and he thereby exposed himself to be dealt with under the military laws to which he was subject. It cannot be permitted that a parent shall lie by for months, and even years, and make no effort to reclaim a minor child, and then, when by his misconduct he has made himself amenable to the punishment provided for desertion, step in and withdraw the subject of the writ from the action of the tribunal to which he is responsible. If this is to be allowed, all discipline is at an end, and the army would become still more demoralized by the multiplication of desertions, which have greatly reduced its numbers and marred its efficiency. Suppose the recruit had meanly skulked away on the eve of battle, or manifested cowardice in the presence of the enemy, or been guilty of mutinous and disorderly conduct, can it be that while he is under arrest for these high military offences he may, by the assertion of a claim theretofore held in abeyance, be taken from under the jurisdiction to which he has voluntarily subjected himself, and thus escape all lia-

bility to be dealt with and punished by the military law for the crime laid to his charge? It seems to me that cannot be done. For the time being, and while this state of things exists, the military law in his case overrides the parental claim, and he must answer to the tribunal which has jurisdiction of the offence, and holds the alleged offender in custody to be tried for his crime. The punishment may and probably will be light. If nothing more, he would justly be deprived of his pay for the service he should have rendered, and the bounty he would have received if he had faithfully and honorably fulfilled his engagement. The civil tribunal under such a state of things should not, and as far as I am concerned will not, interpose to shield a soldier who owes a duty to the government from his just responsibility to the law to which he is subject, and which has jurisdiction of the offence and the offender. If the maxim *"silent leges inter arma"* has in some connections a doubtful and dangerous aspect, I think in such a case as this it may fairly be invoked. The recruit took the benefits, present and prospective, of his enlistment, and he must, so far as he is concerned, take its burdens also, and incur all its responsibilities. When the government has vindicated its authority, the claims of the parent may be preferred and will be sustained.

It follows that the writ of habeas corpus must be dismissed, and the prisoner remanded to the custody of the parties holding him in charge when the writ was issued and served.