### In the matter of JOHN O'CONNOR, a private enlisted in the United States army.

Congress has the power to pass an act prohibiting the state judges from interfering with enlistments in the army or navy, upon *habeas corpus*.

The acts of congress, of February, 1862, and of February and July, 1864, conferring upon the Secretary of War the authority to discharge enlisted minors, upon certain terms and conditions, are to be construed as having provided a mode by which persons improperly enlisted can be discharged, and as having forbidden other modes of obtaining their discharges.  LEONARD, J. dissented.

The federal government has by those acts assumed such jurisdiction, in cases of this kind, as to make it necessarily exclusive.  *Per* CLERKE, J.

OWEN O'CONNOR, the father, sued out a writ of habeas corpus, in December, 1866, directed to Major General Butterfield, superintendent of the general recruiting service of the United States, commanding him to produce the body of John O'Connor, appearing by the petition of the said Owen to be his son, enlisted into the service shortly before that time, under the age of twenty-one years ; the said Owen being entitled to the custody and services of his said son.

In the matter of John O'Connor.

General Butterfield returned, to the said writ, that the said John had been regularly enlisted into the army; and he annexed the enlistment papers of the said John, whereby it appeared that he enlisted at Boston, in the state of Massachusetts, December 12, 1866; that he was then of the age of twenty-two years, born at Weymouth, Mass. ; and that he was by occupation a laborer; to which statement he made oath on the 13th of December, 1866, before a lieutenant of the U. S. Artillery, who also certified to his inspection of the recruit ; that he was sober, when enlisted ; that to the best of his belief the recruit was of lawful age ; and that in accepting him the officer had observed the regulations governing the recruiting service. General Butterfield also returned that in pursuance of the directions of the judge advocate general of the army, a copy of which in writing he also annexed, it was not his duty to produce the said recruit in court. He further declared that his denial of the jurisdiction of the court, and refusal to produce the recruit, was from a sense of official duty, and not from any disrespect or contempt of the court. At the hearing before the judge who granted the writ, the petitioner made oath that the recruit was born in Ireland, January, 1849, and that he would not be eighteen years of age until the 6th of January, 1867, and that he was not eighteen years of age at the time of his enlistment, and was supported by his father, the petitioner, for whom he worked, and to whom he owed service ; that he had not sold his service, or consented to his enlistment. This evidence was not disputed, except by the introduction of the said enlistment papers, and the oath of the recruit, therein contained ; but its admissibility was objected on behalf of government.

The judge thereupon denied the motion to discharge the prisoner and the prisoner appealed.

*A. Loring Cushing*, for the petitioner.

*Asa Bird Gardiner*, for the respondent.

In the matter of John O'Connor.

INGRAHAM, J.  In this case, while I am of opinion that the judges of. the state courts might have exercised jurisdiction, prior to the passage of the acts of 1862 and 1864, I am not clear that the right to exercise that power remains. No doubt congress might pass an act prohibiting the state judges from interfering with enlistments in the army or navy. If they possess that power, the inquiry arises, whether the provisions of those statutes do not virtually prohibit it. They provide for a mode of discharge by the secretary of war, and they annex terms and conditions in which such discharges can be granted. These provisions may be construed as having provided a mode by which persons improperly enlisted can be discharged, and as having forbidden other modes of obtaining their discharges.

I am inclined, also, to yield to the opinions of the judges of the United States court in this district, on this question, as the petitioner may apply to any of those judges, on *habeas corpus*, for relief.

At any rate it is unnecessary to send the case back to the judge who allowed the writ. All the evidence was taken between the parties, and if the general term are of the opinion that the recruit should be discharged, they can now order it. The judge below passed upon the evidence and denied the application. The general term can only reverse his decision, and make the order he should have made, if he was in error.

Motion to discharge the prisoner should be denied.


CLERKE, J.  I agree with Judge INGRAHAM, in thinking that the federal government has by recent legislation assumed such jurisdiction, in cases of this kind, as to make it necessarily exclusive. This I think it has a constitutional right to do, under the power given to it " to raise and support armies." (*Const. of U. S.* § 8, *subd.* 11.) Besides, this is a " controversy" to which the United States is a party ; as much so

In the matter of John O'Connor.

as to an action in which a collector of a port is a party ostensibly, but the United States actually.

LEONARD, J. (dissenting.) The weight of authority in this state is decidedly that the jurisdiction of the state courts and judges is concurrent with that of the United States upon *habeas corpus*, in cases like the present, where the prisoner is not detained by the process of any court of the United States, or any judge thereof, or the judgment of any court of the United States. (1 *Kent's Com.* 400, 401. *In re Stacy*, 10 *John.* 328, *In re Metzger*, 1 *Barb. S. C. Rep.* 248, *Edmonds, J. In re Dobbs*, 21 *How. Pr.* 68, *Hoffman, J. In re Carlton*, 7 *Cowen*, 471. *In re Webb*, 24 *How. Pr.* 247. *Brown, J.*)

In this case the oath of the recruit was held to be conclusive against himself, but not against others having the legal right to his services. To the same effect is the opinion of Judge Bacon in the case of *Berwick*, (25 *How. Pr.* 149.)

The authority principally relied on to maintain the doctrine that this court has no authority to discharge, &c. on *habeas corpus* is the case of *Abelman* v. *Booth*, (21 *How. U. S. Rep.* 506,) and the case of *Hopson*, (40 *Barb.* 34.) In the latter case the opinion of Judge Bacon is founded largely upon his understanding of the language of Judge Taney, in the case of *Abelman* v. *Booth*. Let us examine that case for a moment, and ascertain its extent as authority for the position claimed by the counsel for the government. The decision embraces two appeals affecting the same party. In the first case the prisoner was held upon process issued by a commissioner of the United States, having the powers of a judge in the issuing of process for crime, and in the other, upon conviction and sentence in a court of the United States for a crime. In such case a judge of a state court had assumed to discharge the prisoner because of the invalidity of a law of the United States under which the prisoner had been arrested in the one case, and convicted in the other. The state judge had

assumed to undo, or disregard a legal act done by a commis-sioner acting as a judge, under the authority of a law of the United States conferring jurisdiction upon him to issue process, in the one case, and the trial, conviction and sentence of the prisoner by a court of the United States, in the other case. In both cases the law of the United States must have been held by the commissioner and judge of the United States to be valid. It is too plain for reasoning that a state judge would act in conflict with the judicial authority of the United States courts in attempting to discharge a prisoner held under such circumstances, and that the jurisdiction was not there concurrent.

It did not require the learned argument of a profound judge to prove the conclusion to which the Supreme Court of the United States arrived in that case, but it was expedient that the highest authority should declare the rule necessary to be observed by those who were willing to hold, as judges of the state courts, that the process and judgments of the United States courts could not be set at naught. Whatever was said by Judge Taney, in that case, was said with reference to the facts before him. When he denies the jurisdiction of the state courts, or judges, to discharge, on *habeas corpus*, prisoners held by the authority of the laws of the United States, it includes only such cases as have been passed upon, in some form, judicially, either in granting process or rendering judgment. A prisoner arrested by an officer of the United States on a criminal charge, without any process, would not be in custody by authority of law, so as to preclude a state court or judge from discharging him on *habeas corpus*. There is an entire absence of any analogy between the case of *Abelman* v. *Booth*, and that now before this court. It is time that its citation as an authority to uphold acts done without the authority of any law, state or national, should cease.

It is urged by the counsel for the government, that the acts of congress of February, 1862, and of February and July, 1864, (12 *and* 13 *Stat. at Large*,) confer upon the secretary

In the matter of John O'Connor.

of war the authority to discharge enlisted minors, and that such authority ousts the state courts and judges of all jurisdiction to discharge them on *habeas corpus*.

The authority derived from these acts, for the discharge of minors from the army, by the secretary of war, is not different from that previously existing, under which it was held by nearly every judge of this judicial district, that the authority of state courts and judges to discharge minors enlisted in the army without the consent of their parents or guardians, was concurrent with that of the secretary of war. For a complete review of these statutes, as they existed in 1862, see opinion of Judge Hoffman, in the *Matter of Dobbs*, (21 *How. Pr. Rep.* 68.)

The statutes of February and July, 1864, make it the duty of the secretary of war to discharge any minor enlisted under the age of eighteen years, without the consent of his parents or guardians, upon repayment to the government of all bounties and advance pay, any thing in the act thereby amended to the contrary notwithstanding. The act of February, 1862, provided that the oath of the recruit, as to his age, should be conclusive. While this section was in force, the secretary of war could not lawfully discharge a minor, who had taken such an oath, because it was made by law conclusive evidence as to his age. He may, since the amendment of July, 1864, discharge a minor enlisted under eighteen years of age, notwithstanding his oath.

It has been held, quite recently, by Judge NELSON, in the district court of the United States for the southern district of New York, in the cases of *Michael J. Conly* and *John Jump*, before him on *habeas corpus*, that this change in the law does not extend the authority to the courts, or judges, to grant a discharge to a minor enlisted under eighteen years of age. " The courts," says Judge NELSON, " are not enabled judicially to vary, enlarge or abridge the liabilities by any mandate or interposition acting upon the recruits in service, or officer in the army, in relation to their respective positions.

The amendments of the law create no additional duties for the courts to perform, but in so far as any change is wrought upon the organization of military discipline, it transfers wholly from the cognizance of the judiciary to the department of war the *exclusive charge* of the pecuniary rights and status of minor recruits in the army. Whatever relief or amelioration government will grant that class of the common soldiery, must be obtained under the two statutes above cited. Under the constitution and laws of the land, congress has complete jurisdiction over the whole subject matter involved in the relationship created by the contract of enlistment of the soldiers." Evidence was offered by the deposition of the parents of each of these minors that they were, respectively, under eighteen years of age at the time of enlistment. This evidence was excluded as wholly immaterial. This decision is entitled to the gravest consideration. With the most profound respect for the very learned judge, I am unable to come to the same conclusion.

Congress has forbidden the enlistment of a minor under eighteen years of age. It has directed one of the heads of department to discharge any such recruit, notwithstanding the previous statute declaring that the oath of the recruit should be conclusive evidence of his age, on repayment of bounties, advance pay, &c. Such an enlisted minor is unlawfully detained in the service. Why should not the courts, or the authorized judges, so declare and adjudge, as well as the secretary of war, following the same conditions which congress has directed him to observe? It is not possible to suppose that judges will be less observant of the provisions of the law than the secretary. There is no inhibition upon the courts or judges from declaring that a recruit has been unlawfully enlisted, and is not, for that reason, unlawfully detained in the army. Nor does the law contain any provision declaring that the authority to grant discharges, in such cases, be granted exclusively by the secretary. The act of September 28, 1850, entitled " An act making appropriations for the

support of the army for the year ending June, 1851, provided (section 5) that the secretary of war should order the discharge of any soldier enlisted under the age of twenty-one, without the consent of his parent or guardian."

The courts of this state held very generally that the concurrent duty also devolved on them to discharge minors when enlisted without the consent of parent or guardian. Particularly was it so held in the first judicial district of this state, until the suspension of the writ of *habeas corpus*, in August, 1863. There is not any substantial difference in the provisions of the law of congress now in force, in this respect, and those which then prevailed. The question is still whether the recruit is lawfully detained.

The statutes of this state are imperative upon the courts and judges to grant the writ for personal liberty, whenever applied for by a person appearing by the petition to be unlawfully detained ; and, if no legal cause for such imprisonment or restraint be shown, to discharge such party. (3 *R. S.* 363, 367, § 21, 26, 30, 39.)

It appears to me that it is incumbent on this court to follow the authority of the statutes and decisions of the state, rather than the new and sole advice of one judge of the United States court, however much his opinion may be entitled to respect. If this court were subordinate to the district court, the rule would be different. Should any tribunal, having appellate jurisdiction over this court, arrive at a different judgment, it would then be our duty to defer to superior authority. But till such time, we should adhere consistently to the decisions of our tribunals.

There is no sufficient reason for refusing the jurisdiction. It is true it would be more convenient to do so, but the law and precedents of judicial authority, in this state, would be disregarded, and the captive could not make his wrongs heard, except through the secretary of war, who, it may be assumed, has more important matters to demand his attention. In the present case, it would be the duty of the secretary, on the

In the matter of John O'Connor.

present proof, to discharge the recruit; and it cannot be doubted that he would do so, whenever, in the press of his engagements, the case of a private soldier, on the application of his parents, or of himself, for a discharge on the grounds of his minority, should be reached—a period, perhaps, as long as that of his term of enlistment.

There can be no sufficient reason, in a time of profound peace, why exclusive jurisdiction should be required for the secretary of war, or for the detention of a military recruit, enlisted at an age when the law requires him to be discharged by the secretary, notwithstanding any oath he may have taken on the subject of his age.

Congress had the power to have conferred the authority exclusively upon the secretary of war, but, in my opinion, they have not done so; and such a construction is not required by existing circumstances. ·

The recruit should be discharged, upon the conditions prescribed by the statute, of repayment of bounties and advance pay, and returning the government clothing.

It is apparent that General Butterfield has not intended any disrespect of the court; but martial law no longer prevails, and the military, as before the war, are subordinate to law and order, and must obey the orders of the civil tribunals.

An order should be made reversing the order granted by the judge, directing the production of O'Connor, and that he be discharged on complying with the conditions above mentioned.

Order appealed from affirmed.

[NEW YORK GENERAL TERM, January 7, 1867. *Leonard, Clerke* and *Ingraham*, Justices.]