## Case No. 4,678.

### In re FARRAND.

[1 Abb. U. S. 140;[1] 2 Am. Law T. Rep. U. S. Cts. 4.]

District Court, D. Kentucky. Dec. Term, 1867.

B. H. Bristow, Dist. Atty., and T. R. Hallam, for petitioner.

John F. Fiske, for respondent.

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

BALLARD, District Judge. On December 9 the relator, Charles E. Farrand, presented to this court a petition showing that he was held in confinement by Thomas Fowler, marshal of the city of Newport, "for an act done or omitted to be done in pursuance of a law of the United States," and praying for a writ of habeas corpus. The petition, on its face, presenting a case which clearly entitled the relator to relief under the provisions of section 7 of the act of congress of March 2, 1833 [supra], and perhaps also under the act of February 5, 1867 [14 Stat. 385], the writ was issued, directed to the marshal of Newport.

In obedience to this writ the marshal produced in court the body of the relator, and made his return showing that he holds him by virtue of an order made by the mayor's court of Newport, in a regular proceeding before it. The marshal makes part of his return the proceedings had before the mayor's court, and has exhibited certified copies of them.

From these proceedings it appears that on November 7, 1867, on the petition of Jane Johnson, representing herself as the mother of Archibald Johnson, a writ of habeas corpus was issued by the mayor's court of Newport, directed to the commander of Newport barracks, commanding that officer to bring before it Archibald Johnson, illegally detained, as was alleged, together with the cause of his capture and detention. This writ being served on the relator, who was in temporary command of the barracks, he in due time made his return in substance as follows:

"I have the honor to make return to the within writ of habeas corpus that the within named man is a duly enlisted soldier in the army of the United States at Newport barracks.

"I also deny the jurisdiction of the mayor's court or any state court of the state of Kentucky, and recognize only the jurisdiction of the United States courts in cases of this kind.

"I do not intend any disrespect in the above return to the court of his honor Mayor Buchanan, but must respectfully decline obeying the writ through a sense of duty."

The relator also exhibited with his return a copy of the enlistment of the soldier, which shows that he was duly and regularly enlisted as a soldier in the army of the United States, April 22, 1867; that the oath required by law was administered to the recruit by an officer authorized to administer such oath; that the recruit was regularly examined by the surgeon appointed for that purpose; and that he made his declaration, to the truth of which he swore, in which he, among other things, states that "I am twenty-one years and nine months of age."

Notwithstanding this return and exhibit, the mayor's court proceeded with the case, and made an order to the effect, "it appear-

ing upon proper proof that said Archibald Johnson was enlisted when he was under age of seventeen years, without the consent of his mother, and that he has no guardian, he is discharged."

But the relator refused to obey this order, and continued to hold the recruit in the United States service by virtue of his enlistment. For this refusal the mayor's court proceeded against him by process of contempt, and it is under this process that he is now in confinement.

I have not set forth all the proceedings which took place in the mayor's court, but have stated all that are material.

The relator filed a paper in the nature of a traverse to the return of the marshal, in which he reiterates all the facts set forth in his return made to the writ issued from the mayor's court, and alleges that, though he is in confinement for an alleged contempt of an order of said court, he is really confined for detaining a soldier duly enlisted in the service of the United States, and for omitting to discharge him, as he was bound to do under the laws of the United States. He claims that he is confinement for an act done or omitted to be done in pursuance of a law of the United States.

Section 7 of the act of congress of March 2, 1833 (4 Stat. 634), provides, "That either of the justices of the supreme court, or a judge of any district court of the United States, in addition to the authority already conferred by law, shall have power to grant writs of habeas corpus in all cases of a prisoner . . . in confinement when he . . . shall be committed or confined . . . . by any authority or law, for any act done or omitted to be done in pursuance of a law of the United States."

It is wholly immaterial whether the act of the relator is to be regarded as an act of commission in that he detained the recruit, or as an act of omission in that he refused to discharge him; for whether it is the one or the other it is equally within the terms of the act of congress, if it was "done in pursuance of a law of the United States."

The question then arises, had the relator a right, under the laws of the United States, to retain the recruit and refuse to discharge him?—and this presents the further question, had the mayor's court any jurisdiction to discharge him?

That the relator had the right and was required to detain the recruit as a regularly enlisted soldier in the army of the United States, unless the order of discharge made by the mayor's court annulled his right, is not questioned and is unquestionable. I proceed, therefore, at once to consider the question of the jurisdiction of the mayor's court, as the only question presented in the case; for it is hardly necessary to state that if the mayor's court, notwithstanding the return made to it showing that the soldier was held under the authority of the United

States, had the jurisdiction to discharge him, then the relator is lawfully in confinement, and cannot be relieved by this court; but if that court had no such jurisdiction, then its order to discharge is void, not binding on the relator, and he is in confinement for detaining the soldier, as he was required to do by law,—that is, "for an act done in pursuance of a law of the United States."

The question thus presented is one of vast importance, and I have endeavored to bestow upon it that deliberation which its importance demands. It involves much more than the question whether the recruit, Johnson, shall remain in the army of the United States until his term of enlistment expires, or shall be at once discharged. It involves much more than the question whether the mayor's court of Newport has jurisdiction by habeas corpus to discharge a minor regularly enlisted in the army. It involves the further question whether any state court has jurisdiction, under such writ, to discharge the prisoner, when it is shown to it that he is held under authority of the United States; for if any state court has such right, I see not why it is not possessed by the mayor's court.

From the beginning of the government down to the decision of the supreme court of the United States in 1858, in the cases of Ableman v. Booth, and U. S. v. Booth, 21 How. [62 U. S.] 506, I suppose the very decided preponderance of authority in the state courts sustains the jurisdiction of those courts to discharge upon habeas corpus prisoners who, in their judgment, are illegally held, though held under the authority of the United States. The cases will be found collated in Hurd, Hab. Corp. 164-202. The jurisdiction, it is true, had been frequently disclaimed by able state judges; as by Chief Justice Lansing in 1799 (In re Husted, 1 Johns. Cas. 136); by Chief Justice Nicholson in 1809 (In re Roberts, 2 Hall, Law J. 192); and by Chief Justice Kent in 1812 (In re Ferguson, 9 Johns. 239). But, as I have said, down to the decision in the case of Ableman v. Booth, the preponderance of state decisions was the other way, though since that decision the weight of authority even in the State courts is against the jurisdiction. State v. Zulich (1862) 29 N. J. Law (5 Dutch.) 409; In re Spangler (1863) [11 Mich. 298]; In re Hopson (1863) 40 Barb. 43-59; In re Jordan (1863) 2 Am. Law Reg. (N. S.) 749. I have seen other decisions of state courts cited as supporting this view, but as they have not been accessible to me, I will simply enumerate them, that they may be consulted by those who shall have opportunity. State v. Janeway, opinion by E. Dayton Ogden, J., of the supreme court of New Jersey, reported in Newark Daily Advertiser, Dec. 15, 1862; In re Bully, in New York court of common pleas, opinion by Daly, J., reported in New York Tribune and Herald of March 19, 1867; In re O'Connor.

in New York supreme court, opinion by Ingraham, J. [48 Barb. 258]. And see 2 Abb. Nat. Dig. 609, note.

The decisions and opinions in the district and circuit courts of the United States, both before and since the decision in Ableman v. Booth, have denied the state jurisdiction. In re Keeler (1843) [Case No. 7.637]; Norris v. Newton (1850) [Id. 10,307]; In re Veremaitre (1851) U. S. Dist. Ct. S. D. N. Y. [Id. 16,915]; Charge to the grand jury by Nelson, J. (1851) 1 Blatchf. Append.; Ex parte Sifford (1857) U. S. Dist. Ct. S. D. Ohio [Case No. 12,848]; In re McDonald (1861) Dist. Ct. Mo. [Id. 8,751]; Conk. Pr. (4th Ed.) 583-585.

The current of opinions in the courts of the United States is, so far as I know, absolutely unbroken except by a single opinion recently rendered by the learned district judge for the northern district of New York, in Re Reynolds [Case No. 11,722], on habeas corpus. I have examined this opinion with great care, and while I assent, though not without some hesitation, to the decision made. I cannot but regard much that is said as not properly belonging to the case before the court. The prisoner, Reynolds, being in custody under color of authority of the United States, the learned judge sitting as a judge of the United States had unquestionable jurisdiction under the express terms of section 14 of the judiciary act of 1789 [1 Stat. 81], to inquire by habeas corpus into the cause of his detention, and to discharge him if he found the detention illegal; and when he decided that the previous refusal of a state judge to discharge the prisoner, no matter whether the state judge had jurisdiction or not, was no bar to his inquiry. I cannot see that anything he says respecting the jurisdiction of state courts to discharge upon habeas corpus persons held under color of authority of the United States, necessarily or properly belongs to the case. Moreover, this opinion is not only adverse to the current of opinions in the circuit and district courts of the United States, but is, I think, opposed to the opinion of the supreme court of the United States.

I might fortify my decision by copious extract from the opinions of federal and state judges, but the opinion of the supreme court is so conclusive, and I shall be obliged to quote from it so extensively, that I can not, without extending this opinion to an inordinate length, make any further reference to them than has already been made. I proceed, therefore, at once to the opinion of the supreme court, rendered in cases of Ableman v. Booth and U. S. v. Booth [21 How. (62 U. S.) 506].

In the first case it appears that Booth was arrested by the United States marshal upon a warrant issued by a commissioner under the fugitive slave act, charging him with the offense of aiding and abetting the escape of a fugitive slave, and that he was committed to prison. While thus held, a justice of the supreme court of Wisconsin issued a writ of habeas corpus directed to the marshal, requiring him to produce the body of the prisoner, with the cause of the detention. The marshal made a return that he was held by virtue of the warrant of the commissioner, a copy of which he annexed to his return.

Upon argument and a demurrer to the return, the judge held the detention to be illegal, and Booth was discharged from custody. Upon this decision the marshal sued out a certiorari, and removed the case to the supreme court, where, upon argument. the decision was affirmed. It proceeded upon the ground that the fugitive slave act was unconstitutional, and that, consequently, the marshal had no authority to make the arrest and hold the defendant in custody.

In the second case, Booth had been indicted for the same offense with which he had previously been charged before the commissioner, been tried and convicted in the United States district court for Wisconsin, and sentenced, and was in execution upon the judgment.

Thereupon another writ of habeas corpus was issued by the supreme court sitting in bank, upon a petition setting forth, among other things, that the conviction was illegal by reason of the invalidity of the act under which he was indicted, tried, and convicted. The return of the sheriff consisted of a transcript of the proceedings, judgment, and sentence of the district court, and stated that to be the authority and process by which the prisoner was held. The court heard the argument, and decided the imprisonment to be illegal, and ordered Booth to be at once discharged, which was accordingly done. Upon both these decisions writs of error were prosecuted to the supreme court of the United States.

The court, after recapitulating the facts, state the point presented by each as follows: "It will be seen from the foregoing statement of facts that a judge of the supreme court of the state of Wisconsin, in the first of these cases, claimed and exercised the right to supervise and annul the proceedings of a commissioner of the United States, and to discharge a prisoner who had been committed by the commissioner for an offense against the laws of this government, and that this exercise of power by the judge was afterward sanctioned and affirmed by the supreme court of the state.

"In the second case, the state court has gone a step further, and claimed and exercised jurisdiction over the proceedings and judgment of a district court of the United States, and upon a summary and collateral proceeding, by habeas corpus, has set aside and annulled its judgment, and discharged a prisoner who had been tried and found guilty of an offense against the laws of the United States, and sentenced to imprisonment by the district court."

The opinion proceeds: "No state can authorize one of its judges or courts to exercise judicial power, by habeas corpus or otherwise, within the jurisdiction of another and independent government. And although the state of Wisconsin is sovereign within its own territorial limits to a certain extent, yet that sovereignty is limited and restricted by the constitution of the United States. And the powers of the general government, and of the state, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres. And the sphere of action appropriated to the United States is as far beyond the reach of the judicial process issued by a state judge or a state court, as if the line of division was traced by landmarks and monuments visible to the eye. And the state of Wisconsin had no more power to authorize these proceedings of its judges and courts, than it would have had if the prisoner had been confined in Michigan, or in any other state of the Union, for an offense against the laws of the state in which he was imprisoned."

The manifest import of this language is that a person held in custody under the authority of the United States is as far beyond the jurisdiction of a state court as if he were personally in a different state.

The court then, after enforcing in a masterly argument the position that the federal judiciary has jurisdiction of all cases arising under the constitution and laws of the United States, and that this jurisdiction of all cases arising under the laws must be exclusive in order to preserve harmony, say, "We do not question the authority of state court or judge, who is authorized by the laws of the state to issue the writ of habeas corpus, to issue it in any case where the party is imprisoned within its territorial limits, provided it does not appear, when the application is made, that the person imprisoned is in custody under the authority of the United States. The court or judge has a right to inquire, in this mode of proceeding, for what cause and by what authority the prisoner is confined within the territorial limits of the state sovereignty. And it is the duty of the marshal, or other person having the custody of the prisoner, to make known to the judge or court, by a proper return, the authority by which he holds him in custody. This right to inquire by process of habeas corpus, and the duty of the officer to make a return, grows, necessarily, out of the complex character of our government, and the existence of two distinct and separate sovereignties within the same territorial space, each of them restricted in its powers, and each, within its sphere of action prescribed by the constitution of the United States, independent of the other. But after the return is made, and the state judge or court judicially apprized that the

party is in custody under the authority of the United States, they can proceed no further. They then know that the prisoner is within the dominion and jurisdiction of another government, and that neither the writ of habeas corpus nor any other process issued under state authority can pass over the line of division between the two sovereignties. He is then within the dominion and exclusive jurisdiction of the United States. If he has committed an offense against their laws, their tribunals alone can punish him. If he is wrongfully imprisoned, their judicial tribunals can release him and afford him redress. And although, as we have said, it is the duty of the marshal, or other persons holding him, to make known, by a proper return, the authority under which he detains him, it is at the same time imperatively his duty to obey the process of the United States, to hold the prisoner in custody under it, and to refuse obedience to the mandate or process of any other government. And consequently it is his duty not to take the prisoner, nor suffer him to be taken before a state judge or court upon habeas corpus issued under state authority. No state judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them. And if the authority of a state, in the form of judicial process or otherwise, should attempt to control the marshal or other authorized officer or agent of the United States, in any respect, in the custody of his prisoner, it would be his duty to resist it, and to call to his aid any force that might be necessary to maintain the authority of law against illegal interference. No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence."

The court do not mean that the state judge or court can proceed no further only when it is proven that the party is in custody under the lawful authority of the United States. If this be their meaning, surely it was not necessary to enforce the correctness of the proposition by any such labored argument as that in which they indulge, for it is undeniable that when it is shown and proven, in answer to a writ of habeas corpus, that a party is in custody under the lawful authority of the United States, the federal judge is as powerless to proceed further as the state judge.

No judge, state or national, can, under a habeas corpus, discharge a party who is in lawful custody. What the court obviously mean is, that when it is shown to the state judge, by the party's own petition or by the return to the writ, that the prisoner is in

custody under what purports to be the authority of the United States,—such as an enlistment of a recruit or a writ issued by a court, judge, or commissioner of the United States,—he can proceed no further. He can co more inquire whether the recruit was of age at the time of his enlistment, and subject to enlistment under the laws of the United States, than he can inquire whether the court, judge, or commissioner of the United States had jurisdiction to issue the writ under which the party is held. When the state judge is informed that the prisoner in whose behalf he has issued a writ is in custody as an enlisted soldier of the United States, or under process issued by one of their judges or commissioners, he knows "that the prisoner is within the dominion and jurisdiction of another government, and that neither the writ of habeas corpus, nor any other process issued under state authority, can pass over the line of division between the two sovereignties. He is then within the dominion and the exclusive jurisdiction of the United States." . . . . "If he is wrongfully imprisoned, their judicial tribunals can release him and afford him redress." It is the federal judiciary only which can release a party wrongfully imprisoned under authority of the United States; but, obviously a party wrongfully imprisoned is illegally imprisoned, and is not held under lawful authority; and if follows that if a state court can discharge a recruit because he was a minor, and enlisted without warrant of law,—that is, wrongfully,—it assumes the very jurisdiction which the supreme court deny to it.

"It is (say the court) the duty of the marshal, or other person holding him (prisoner) to make known, by a proper return, the authority under which he detains him;" but "it is at the same time imperatively his duty to obey the process of the United States, . . . . to hold the prisoner in custody under it, and to refuse obedience to the mandate or process of any other government. And consequently it is his duty not to take the prisoner, or suffer him to be taken before a state judge or court upon a habeas corpus issued under state authority. No state judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them." But if a state court, after it is informed by a proper return that the party in whose behalf it has issued a writ of habeas corpus is imprisoned under authority of the United States, cannot require him to be brought before it, that court can make no inquiry into the actual legality of the authority; for such an inquiry is of no value, and would be an idle ceremony without the presence of the prisoner.

The supreme court do not refer to the judgment which the state court should pronounce after hearing the whole case, when it appears that the prisoner is in legal custody under authority of the United States, in the strict sense of these terms. Its duty in such case is plain, and in no respect differs from that of a court of the United States. They refer to the duty of the state court to proceed no further because of its want of jurisdiction, and distinguish between its duty and that of a court of the United States, which latter court they say may discharge a prisoner "wrongfully imprisoned," though imprisoned under authority of the United States. If the state court can inquire into the legality of a custody held under authority of the United States, and depending for its validity upon the construction or constitutionality of an act of congress, then its judgment, though erroneous, is not void, and is as binding, until reversed by the proper court, as if it were correct, or as the judgment of any court of the United States; and all persons who should resist such judgment would be justly liable to punishment. But the supreme court say it is the duty of a person who holds a prisoner under authority of the United States, when he makes it known to the state court that he so holds him, to resist any order of that court discharging him, and this they could not have said if, in their opinion, the state court has jurisdiction to inquire into and pronounce upon the validity of his authority.

The term "authority of the United States," as employed by the court, obviously does not mean necessarily a "valid authority,"—that is, an authority in strict conformity to the laws of the United States,—but an authority whose validity is to be determined by those laws. It is employed in the same sense that the same term is used in section 14 of the judiciary act of 1789. This section, it will be remembered, provides that writs of habeas corpus issued by judges of the United States, shall extend to persons in custody "under authority of the United States," obviously meaning illegal authority, because the writ cannot be issued in behalf of one who appears to be in lawful custody. It is also employed in a sense similar to that in which the term "laws" is used in that clause of the constitution which declares that the judicial power of the United States shall extend to all cases arising under this constitution and the "laws" of the United States. Acts of congress which are unconstitutional, are not, in the strict sense, laws; but undoubtedly the judicial power extends to cases arising under unconstitutional acts of congress, as well as to such as arise under constitutional acts, and this is expressly affirmed by the supreme court in the opinion we have been considering [Ableman v. Booth and U. S. v. Booth] 21 How. [62 U. S.] 520.

What the return of the marshal or other person should contain in order to properly

inform the state court that the prisoner is in custody under authority of the United States, the supreme court do not say. The court may mean that a return simply stating such fact cannot be controverted in the state court. This was, I understand, the ancient rule in all courts, and is the rule to this day in the English courts, and in the courts of the United States when the proceeding is under the act of 1789. Hurd, Hab. Corp. 238, 264; 2 Hawk. P. C. c. 15, § 78; Ex parte Jenkins [Case No. 7,259]; Ex parte Sifford [Id. 12,848]. Or, they may mean that the authority, or a copy of it, should accompany the return, when the authority exists in such shape that it can be produced,—such as an enlistment of a recruit under an act of congress, or a process issued by a court, judge, or commissioner of the United States. But, whether they mean the one or the other, it is certain that the return made by the relator to the mayor's court of Newport conforms substantially to every requisition prescribed by them, and did, if their opinion is law, at once deprive that court of all authority and jurisdiction to proceed further. Nay, more, it then became, say the supreme court, substantially "the duty" of the relator "not to take the prisoner, nor suffer him to be taken, before the mayor's court, and if the state court attempted to control him in the custody of his prisoner it was his duty to resist it, and to call to his aid any force that might be necessary to maintain the authority of the United States against illegal interference."

Now, if it was the duty of the relator, by virtue of the laws of the United States, to retain his prisoner, notwithstanding the order of the mayor's court, then it is plain he is in confinement "for an act done in pursuance of a law of the United States," or "of the authority of the United States," as the supreme court expresses it, and must be discharged.

If the recruit was under the age of eighteen years when he was enlisted, it may be that neither this court nor any court can discharge him, if the United States shall allege that he was then of the legal age for recruiting, because of that provision in the act of congress of February 13, 1862 (12 Stat. 389), which repeals so much of the former acts as provided for the discharge of minors enlisted without the consent of their parents or guardians, and provides that "the oath of enlistment taken by the recruit shall be conclusive as to his age." [2]

But, if he is still under eighteen, he is not without remedy. Section 5 of the act of July 4, 1864 (13 Stat. 380), requires the sec-

dence. Hence I held in Ex parte Ricketts [unreported] that where the officer did not, and would not, in his return to a writ of habeas corpus issued in behalf of a recruit, allege that the recruit was of lawful age when enlisted, he should not offer the "oath of enlistment" as evidence. It is a rule of universal application, in ordinary civil actions, that one will not be allowed to offer proof respecting what he does not allege, and I think this rule may well be applied to proceedings under a habeas corpus when the anomalous provision of the act of 1862 is invoked.

I characterize the provision of the act of 1862 as anomalous, because it makes the "oath of enlistment," which contains only promises respecting the future conduct of the recruit, and not one word in regard to his age, conclusive evidence of his age. It is quite as anomalous as if it had provided that the length of the foot of the recruit should be conclusive of his age. A provision so extraordinary, whilst it must be enforced because it is the law of the land, does not demand a liberal construction.

The whole provision is, "that hereafter no person under the age of eighteen shall be mustered into the United States service, and the oath of enlistment taken by the recruit shall be conclusive as to his age." It is as much a part of the provision that it is unlawful to enlist one under the age of eighteen, as it is that his oath of enlistment shall be conclusive as to his age, and I think that both requisitions of the statute are best met by holding the "oath of enlistment" to be conclusive evidence only when it is alleged in the return that the recruit is of the legal age. When such a return has been made I have frequently held the "oath of enlistment," whether it did or did not contain any statement of the age of the recruit, conclusive of his being of the lawful age; but, as before said, when the return contained no such allegation, I did in one case,—that is, in the Case of Ricketts [supra] hear proof respecting the age of the recruit, and refuse to allow the "oath of enlistment" to be read as evidence of age at all. I am still inclined to think this opinion correct, but cannot now more fully vindicate its correctness.

I am aware that a practice has recently grown up of sometimes swearing the recruit to his "declaration," and of sometimes inserting a statement of the age of the recruit in the "oath of enlistment," but this practice is not, so far as I know, authorized by any law, and, therefore, cannot avail for any legal purpose. There can be no oath in legal contemplation, which is not required to be taken by some law, and there is no law requiring a recruit to swear to his age.

The opinion here indicated is slightly different from those rendered by the learned judge of the southern district of New York in Re Cline [Case No. 2,896], and in Re Riley [Id. 11,834]. The difference between my opinion in the one case above referred to, and the opinion of Judge Blatchford in Re Cline, is of little practical importance; but I dissent from the opinion rendered in Re Riley, so far as it denies the jurisdiction of the federal courts and judges in cases of this kind.

His opinion is founded on the assumption that section 1 of the act of 1814 (3 Stat. 146) is still in force. I think the assumption unfounded. The act of 1814 was a war statute, and section 1 was, I think, superseded as early as 1815, that is, by section 7 of March 3, 1815, entitled, "An act fixing the military peace establishment of the United States." 3 Stat. 224. Section 1 of the act of 1814 has been assumed to be repealed in numerous judicial decisions, and by the war department in all the "army regulations." B.

---

[2] I do not regard the act of 1862, or the act of 1864, as at all affecting the jurisdiction conferred by section 14 of the act of 1789 on judges of the United States to issue writs of habeas corpus. I think they still have the right to inquire into the cause of commitment of any one who is in custody under or by color of the authority of the United States. I regard the act of 1862 as simply furnishing a rule of evidence. I treat the "oath of enlistment" as nothing but evidence—conclusive evidence it is true, but still only evidence.

retary of war to discharge minors who are under eighteen at the time of their application, and who are in service without the consent, either express or implied, of their parents or guardians.

Let no one apprehend that, as a consequence of this opinion, the liberty of the citizen will be seriously jeoparded. This court, and the judge thereof, will, I trust, be ever ready to hear the complaints of all persons wrongfully confined under authority or color of authority of the United States, and to give speedy relief. The communication between the judge's residence and all parts of the state where such confinement is likely to occur, is so easy and rapid that no serious delay can ensue, and if partial evil may result, it were better that this should be endured than that the peace of society should be disturbed by any attempt of state tribunals to interfere with the proper jurisdiction of the national courts, or with officers acting in the line of their duty under the authority of the United States.

Let the relator be discharged.