## Case No. 8,752.

### In re McDONALD.

[1 Lowell, 100.] [1]

District Court, D. Massachusetts. July, 1866.

ARMY—ENLISTMENT—MINORS—HABEAS CORPUS—AUTHORITY OF SECRETARY OF WAR—STATEMENT OF AGE NOT SWORN TO—CONSENT OF FATHER.

1. The power given to the secretary of war to discharge minors unlawfully enlisted in the army, does not take away the jurisdiction of the

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

federal courts to inquire on habeas corpus into the validity of the contract, and to discharge a minor who is improperly held in the service.

2. Whether congress could constitutionally vest exclusive jurisdiction in the secretary, quaere?

3. Whether the oath of enlistment is conclusive evidence of age as against the parent petitioning for habeas corpus, or is only intended for the protection of the mustering officer, quaere?

4. Where the statement of age on the enlistment paper was not sworn to, *held*, it was not an oath of enlistment within the statute of 1862 [12 Stat. 339].

5. Whether a minor under sixteen years old can be lawfully enlisted, even with the consent of his father; and whether one between eighteen and twenty-one years old can be lawfully enlisted without such consent, quaere?

6. Where the minor was less than eighteen at the time of his enlistment, and at the date of the writ, and his father had not consented, and no oath of enlistment was taken, he was ordered to be discharged on his father's returning the advance which the recruit had received.

Habeas corpus to Colonel Wildrick; commanding officer of Fort Independence, in Boston harbor, to test the validity of the enlistment of James McDonald, in the army of the United States. By the return to the writ and the other evidence, it appeared that the boy was enlisted in May, 1866, being then seventeen years and six months old, without the consent of the petitioner, his father. Upon the back of the enlistment paper was a declaration, signed by the boy, declaring his age to be eighteen; there was no jurat, nor was any evidence given that this declaration had been sworn to. The petition was filed about two months and a half after the enlistment, and was the only act or declaration of the petitioner expressing his dissent.

G. W. Searle, for petitioner.

W. A. Field, Asst. Dist. Atty., for respondent.

1. Congress has a constitutional power to enlist minors without the consent of their parents. U. S. v. Bainbridge [Case No. 14,-497]; Com. v. Gamble, 11 Serg. & R. 93; Lanahan v. Birge, 30 Conn. 438. 2. The several statutes, construed together, authorize the enlistment of young men eighteen years old or more, without the consent of their parents, and between sixteen and eighteen with consent. (Counsel here cited the acts.) 3. The oath of enlistment conclusively proves that this soldier was eighteen years old. See St. Feb. 13, 1862, § 2 (12 Stat. 339). If not, the father's consent may be inferred from his knowledge and inaction. 4 The only remedy for one who is under the lawful age is by applying to the secretary of war. St. Feb. 24, 1864, § 20 (13 Stat. 10); St. July 4, 1864, § 5 (13 Stat. 380); Ableman v. Booth, 21 How. [62 U. S.] 523; In re Jordan, 2 Am. Law Reg. [N. S.] 749; In re Spangler [11 Mich. 298].

LOWELL, District Judge. A careful examination of the acts of congress regulating enlistments in the army is requisite to the determination of this case; and the more so, because comparatively few decisions are to be found in the books, each case being usually heard in a summary way, before a single judge, whose action is final. The act of March 16, 1802, § 11 (2 Stat. 135). which is the foundation of the whole system, authorizes the enlistment of able-bodied citizens, between the ages of eighteen and thirty-five years; and provides that no one under the age of twenty-one years shall be enlisted or held in the service without the consent of his parent, guardian, or master. During the War of 1812, congress found it necessary to recruit men between eighteen and fifty years old, and to dispense with the consent of parents. St. Dec. 10, 1814 (3 Stat. 146). They took pains to guard against hasty or ill-advised enlistments of minors; for, by section 2, such recruits were to be at liberty to reconsider and withdraw their enlistments at any time within four days after they were made.

On the third of March, 1815 (3 Stat. 224). after the conclusion of peace had become known to congress, an act fixing the military peace establishment of the United States was passed, which repealed that of 1814, for it enacted (section 7) that the several corps should be recruited in the same manner, and with the same limitations, &c., as were authorized by the act of 1802, and one of those limitations was, that only persons between eighteen and thirty-five years old should be enlisted; and another was, that no minor should be either enlisted or held without the consent of his parent. In 1838 a law was passed which repealed so much of the act of 1802 as established a standard of height for enlisted men. St. July 5, 1838, § 30 (5 Stat. 260). The next statute is that of September 28, 1850, § 5 (9 Stat. 507), which makes it the duty of the secretary of war to order the discharge of any soldier who was under twenty-one years at the time of his enlistment. upon evidence that such enlistment was without the consent of his parent or guardian.

Before examining the several acts passed during and since the Rebellion, we may properly review the state of the law up to 1862. It seems clear that the legislation of 1815 adopted or re-enacted the law of 1802, and that congress so understood the case in 1838 and 1850. And yet most respectable authority may be cited to the point, that the consent of parents was unnecessary. 5 Op. Attys. Gen. 313; 6 Op. Attys. Gen. 607; Phelan's Case, 9 Abb. Prac. 286. These opinions, notwithstanding their origin, are of little weight, because the learned attorneys and judges who pronounced them overlooked entirely the act of 1815. They did not construe that statute as not repealing the one of the former

year, but merely failed to cite it, and assumed that there was no legislation after December, 1814.

Against this may be put the plain language of the statute of 1815, the practice of the war department, and a great many decisions of the courts, among which are the following: In re Dobbs, 21 How. Prac. 68; U. S. v. Wright [Case No. 16,777]; In re Keeler [Case No. 7,637]; 10 Op. Attys. Gen. 146; In re Kimball, 9 Law Rep. 500; Bamfield v. Abbot [Case No. 832]. Shaw, C. J., in Kimball's Case [supra], after showing that the presumption was that congress would not undertake to enlist minors without the consent of their parents, says: "In December, 1814, during the darkest period of the last war with England, it being necessary to fill the ranks of the army, an act was passed repealing a previous statute which required the consent of parents and guardians; and providing, with great care, that minors might be enlisted without such consent. This law was repealed in March, 1815, having been in force only about four months." See, besides, Opinion of Jackson, J., 1 Car. Law Repos., 47; Com. v. Downes, 24 Pick. 227; Re Higgins, 16 Wis. 351; State v. Dimick, 12 N. H. 194; State v. Brearly, 2 South. [5 N. J. Law] 555; In re Dew, 25 Law Rep. 538.

It is plain, then, that up to 1862 no minor, whose father was living, could be enlisted in the army without the father's consent. Act Feb. 13, 1862, § 2 (12 Stat. 339), is in these words: "That the fifth section of the act of twenty-eight September, eighteen hundred and fifty, providing for the discharge from service of minors enlisted without the consent of their parents or guardians be, and the same hereby is, repealed: provided, that no person under the age of eighteen shall be mustered into the United States service, and the oath of enlistment taken by the recruit shall be conclusive as to his age." It would seem probable that congress overlooked the act of 1802, which forbade the enlisting or holding of minors without consent, for they do not repeal it in terms. And the act of 1802 is so explicit in repealing merely the fifth section of the law of 1850 that it seems very difficult to construe it as an implied repeal of the principal act regulating enlistments. And this was the view of the war department; for by the army regulations of 1863 (Appendix B, § 16, p. 511) officers are instructed that the act of 1862 prohibits the discharge of minors, but does not authorize their enlistment without the consent of their parents, masters, or guardians. I have seen no later regulations, but it is said that the practice has since been changed, and that minors are now enlisted between the ages of sixteen and eighteen years with the consent of their parents, and above eighteen without consent. This practice is said to be founded on the three latest statutes: St. Feb. 24, 1864, § 20 (13 Stat. 10); July 4, 1864, § 5 (13 Stat. 380); and March 3, 1865, §§ 17, etc. (13

Stat. 489, 490). The first of these authorizes, and the second requires, the secretary of war to discharge all persons who at the time of the application are under the age of eighteen years, upon due proof that they are in the service, without the assent, express or implied, of their parents or guardians; and the third punishes with great severity officers who shall enlist or muster persons under sixteen years old in any case, or those between sixteen and eighteen, without the consent of their parents.

This review of the statutes shows us these inconsistencies: the law of 1802 authorizes enlistments of persons between eighteen and thirty-five, with consent, &c., if under twenty-one. This law has not been expressly repealed. The act of 1862 prohibits the mustering in of any one under eighteen, but gives no remedy for a breach, and makes the oath of enlistment conclusive; the laws of 1864 require the secretary to discharge all persons under eighteen who have been enlisted without consent, notwithstanding the oath; the law of 1865 punishes the enlistment of a minor between sixteen and eighteen unless with consent. So that while there is not upon the statute book any law authorizing the enlistment of persons under eighteen in any case, nor between eighteen and twenty-one without consent, yet the laws of 1864 and 1865 imply that between sixteen and eighteen they may be enlisted with consent, and above eighteen without it, because it is only when the consent is wanting that the secretary is to discharge or the officer to be punished in the first case, and there is no discharge or punishment in the second. I must say that it appears to me a very doubtful question whether a lawful enlistment can be made of any one under eighteen years old, or of any minor without the consent of his father, and I do not undertake to pass upon these questions at this time. I need not decide them, because this recruit was less than eighteen years old, and was enlisted without his father's consent. I say he was less than eighteen years old, because assuming that the oath of enlistment would be conclusive upon the courts, when applied to by the father, which I very much doubt, as well as a conclusive protection to the mustering officer, yet in this case no oath was taken, and therefore the statute cannot apply. See U. S. v. Wright [supra]. The enlistment, therefore, was illegal upon any construction of the statutes.

It is argued for the respondent that the courts have no jurisdiction of this question, because congress has established a sufficient tribunal in the secretary of war, who must be presumed to have exclusive authority. I can see no good reason to suppose that this was the intention of congress. It has always been the right and duty of the war department to discharge persons illegally enlisted. In one of the earliest reported cases of this sort, the point was taken that the ap-

plication should have been made in that quarter; but the learned judge of the Western district of Tennessee said that congress not only had not undertaken to interfere with the privilege of the writ of habeas corpus, but that they could not lawfully do so excepting under the circumstances pointed out by the constitution. U. S. v. Anderson [Case No. 14,449]. And a like remark was made in Keeler's Case [supra]; and there seems to be force in the suggestion. The act of 1850 expressly imposed this duty on the secretary, and all the adjudged cases which arose between that time and the date of the president's proclamation, suspending the privilege of the writ during the war of the Rebellion, are authorities against the respondent's contention. If a statute creates a new right and provides a remedy, the procedure pointed out by the statute must be followed; but the rule is otherwise where a new remedy is given for an old right, unless the intent that it should be exclusive is clear. So far is that from being the case here, that the acts, as I have said, are merely declaratory of what the secretary might and ought to do by virtue of his office, unless expressly prohibited by congress. While the privilege of the writ was suspended, as it was when these acts were passed, this was the only remedy, and it still is often the most convenient; but it would be contrary to all precedent to oust the jurisdiction of the courts, in a matter involving the liberty of the citizen, by a mere implication, from the fact that the legislature has given the appropriate executive departments power to act in the premises, and this during a war when there was, for the time, no other remedy. In most of the dealings of the citizen with the government, it is the province of some department to see that justice is done him; but if it should be denied, or if any dispute arises, the courts must finally determine the matter. Here the relator had his choice of remedies. He might have applied to the secretary, who would have had the power and the will to do him justice; but if he finds it more convenient, he has a right to his writ.

I may here confess to a serious doubt whether, upon the true theory and practice of our mixed government, the state courts ought ever to have taken jurisdiction of these cases. Upon this point, Ableman v. Booth, 21 How. [62 U. S.] 506, and other authorities, cited in argument, are instructive. But the practice is now so well established that only the supreme court of the United States can change it.

I must discharge the prisoner; but, following the rule which the statute of 1864 lays down for the secretary of war, and treating the remedies as truly concurrent, I shall order that the father do first return to the United States the clothing supplied by them to the son, which, as I am informed, is all that has been advanced in this instance. Order accordingly.