### John McConologue's case.

This court, or a justice thereof, has jurisdiction, upon the petition of a minor or of his father, to issue a writ of *habeas corpus* to inquire into the validity of his imprisonment or detention in this Commonwealth under an alleged enlistment in the army of the United States, and, if the enlistment be found to be illegal, to discharge him from the custody of the military officer holding him.

The acts of congress of 1864, cc. 13, 237, authorizing and directing the secretary of war to discharge minors enlisted without the consent of their parents or guardians, do not affect the jurisdiction of the courts to discharge them upon *habeas corpus.*

The judicial discharge of a person upon *habeas corpus* conclusively determines that he was not liable to be held in custody upon the state of facts then existing.

The omission of the person in whose custody the prisoner is found to make the written statement or return required by the Gen. Sts. c. 144, § 12, to a writ of *habeas corpus*, does not impair the effect of a discharge ordered by the court or judge after hearing both parties.

The decision of a justice of this court upon a writ of *habeas corpus*, discharging a person from detention under his enlistment in the army of the United States, upon the petition of his father alleging him to be a minor enlisted without his consent, and after the military officer detaining him has appeared and been heard, is conclusive that he was a minor, and not subject to be held as a soldier either by virtue of his enlistment or under any previous arrest or charge for desertion; and entitles him to be again discharged upon a writ of *habeas corpus* granted on his own petition, if he is retaken by the military officer upon either of those grounds, or under a subsequent despatch from the secretary of war directing him to be arrested wherever found and sent out of this state.

Habeas corpus, issued December 6, 1870, upon the petition of John McConologue by his next friend Neil Kenney, verified by the oath of the latter, which represented that McConologue was a minor, of the age of nineteen years, residing with his parents at Woburn in the county of Middlesex and this Commonwealth; that on August 19, 1870, he was enlisted by Charlie Wheaton of the United States army, and by said Wheaton unlawfully restrained of his liberty; that on November 15, 1870

James McConologue, his father, applied to this court for a writ of *habeas corpus*, which was granted, and on the same day a hearing was had by this court upon the facts in the case, 'the said Wheaton appearing in court with him, and at the close of that hearing he was discharged from the custody of said Wheaton; and that on this 6th day of December 1870 the said Wheaton, or persons acting under his authority, had forcibly seized and arrested him, and now held him in custody, restrained and deprived of his liberty, at No. 2 Bulfinch Street in Boston, " the said Charles Wheaton claiming to act under the pretended authority of the secretary of war of the United States."

To this writ the following return or statement was made in writing, under oath of the respondent, and filed December 10, 1870 :

" Charles Wheaton, a captain in the army of the United States, now recruiting officer at Boston in the county of Suffolk, comes into court and claims the custody and possession of the said John McConologue, and makes the following statement :

" That the said John was duly enlisted and mustered into the service and army of the United States, at Boston aforesaid, on or about the 17th day of August 1870, by him, the said Wheaton, being then and there an officer in the army of the United States, and having charge of the business of recruiting and enlistment in said Boston; that said John then and there signed a declaration of enlistment, a copy whereof is hereto annexed,\* and also

---

\* "I, John McConologue, born in Woburn in the state of Massachusetts, aged twɜ ty-two years, and by occupation a currier, do hereby acknowledge to have voluntarily enlisted this 17th day of August 1870, as a soldier in the army of the United States of America, for the period of five years, unless sooner discharged by proper authority; do also agree to accept such bounty, pay, rations and clothing as are or may be established by law. And I, John McConologue, do solemnly swear that I will bear true faith and allegiance to the United States of America; and that I will serve them honestly and faithfully against all their enemies or opposers whomsoever; and that I will observe and obey the orders of the President of the United States, and the orders of the officers appointed over me, according to the Rules and Articles of War.

" John McConologue.

" Sworn and subscribed to at Boston, Mass., this 17th day of August 1870, before                C. Wheaton, Capt. U. S. A., R. O."

took an oath of enlistment as to his age, a copy whereof is hereto annexed; * that, on or about the 19th day of said August, said John, having received rations and subsistence from the said United States, for which the United States made payment, did desert from the service of the United States, at Boston aforesaid, and was registered and reported as a deserter from said service; that on or about the 14th day of November last said John voluntarily returned to the custody of said Wheaton, and surrendered himself as a deserter, and was placed in confinement for said crime under the laws of the United States, and again under pay and subsistence from the United States; that on the 15th day of said November said John was taken from said respondent's custody on a writ of *habeas corpus* issuing from the supreme judicial court and dated on said 15th day of November; that, on a hearing of the cause the same day, the said court entered an order for the discharge of said John from the custody of said Wheaton, by the order of the Honorable Seth Ames, one of the justices of said court; but that said John was there forcibly in the custody of said court; that said Wheaton made due report thereof to the secretary of war of the United States; that by an order dated the 30th day of said November, and signed by E. D. Townsend, the adjutant general of the army, a copy whereof is hereunto annexed,† said Wheaton was, by direction of the secretary of war,

---

* " I, John McConologue, desiring to enlist in the army of the United States for the term of five years, do declare that I am twenty-two years and months of age; that I have neither wife nor child; that I have never been discharged from the United States service on account of disability, or by sentence of a court martial, or by order before the expiration of the term of enlistment; and I know of no impediment to my serving honestly and faithfully as a soldier for five years.

" Given at Boston, Mass., the 17th day of August 1870.
                                        " John McConologue.

" Sworn and subscribed to at Boston, Mass., this 17th day of August 1870
before                            C. Wheaton, Capt. U. S. A., R. O.

" Witness : Chas. F. Clark, L. Sergt."

† " Adjutant General's Office, Washington, Nov. 30, 1870. Capt. Chas Wheaton, U. S. A. Recruiting Officer, Boston, Mass. Sir: Referring to your report in the case of recruit John McConologue, U. S. A., forwarded through

ordered to rearrest said John; that in pursuance of said order said Wheaton caused said John to be arrested on the 6th day of December current by one Charles F. Clark, a sergeant in the army; that said John was again forcibly taken from the respondent by virtue of a writ of *habeas corpus* issuing from said court and dated on said 6th day of December, on which the said Wheaton, the claimant of said John McConologue, now prays to be heard.

" Said Wheaton further says that he reported the desertion of said John McConologue on or about the 20th of August 1870, to the proper officers, and that said John was then, and is now, liable to be tried by a court martial for violation of the 20th Article of War, of the act of congress of April 10th, 1806.

" The respondent hereto further respectfully represents, that all these proceedings in this honorable court were taken before this respondent could in due course of law present the necessary charges or indictment against the said deserter McConologue to the authority competent by law to pass upon the same and assemble a general court martial for the trial of said McConologue under the laws of the United States, for said crime; but this respondent respectfully avers and maintains that there is sufficient probable cause to induce a belief that said McConologue has committed said crime, and that he, this respondent, has taken his action under the orders of the President of the United States, which he was required by law, on accepting his commission as captain, to execute.

" This respondent further respectfully pleads to the jurisdiction in the premises, and respectfully requests that this writ may be dismissed and the soldier remanded to his custody.

" C. Wheaton, Captain U. S. Army, R. O."

The petitioner by his next friend filed a written traverse of this return, denying " that he was a deserter as set forth in the

the Supt. Genl. Recruiting Service, New York City, I have to inform you that the secretary of war directs that he be arrested wherever found, and sent out of the state of Massachusetts.

" I am very respectfully your obedient servant,

" E. D. Townsend, Adjutant General."

return of Charles Wheaton, or at the time that he petitioned for said writ that he was held and detained as such deserter."

The hearing was before *Wells*, J., who adjourned the case into the court held for the county of Suffolk, and reserved it for the consideration of the full court upon the papers in both cases, (the substance of all which is stated above, except the petition in the first case, which is copied in the margin,*) and the following facts and findings :

"The said parties appearing with counsel, the court found as facts, that John McConologue did enlist on the 17th day of August 1870, and was at the time of his enlistment but nineteen years of age, and that he enlisted without the knowledge or consent of his parents or either of them ; that within two days after

---

* "The petition of James McConologue respectfully represents, that he is a resident of the town of Woburn, of the county of Middlesex and Commonwealth of Massachusetts; that he has a minor son of the age of nineteen, named John McConologue, who was enlisted into the military service of the United States on or about the 19th day of August last, for the term of five years, by Captain Charles Wheaton, having his office and place of enlistment at No. 2 Bulfinch Street in Boston, in the county of Suffolk and Commonwealth aforesaid, without the knowledge or consent of your petitioner, without whose consent he avers and believes said enlistment was and is void.

"And your petitioner further represents, that his said minor son is deprived and restrained of his liberty at said No. 2 Bulfinch Street, by the said Captain Charles Wheaton, or by officers and persons under his charge and direction; that your petitioner has represented to the said Captain Charles Wheaton that the said John McConologue is a minor, and that he, your petitioner, refuses to give his consent to the enlistment; but that the said Captain Charles Wheaton refuses to release the said John McConologue, and is about sending him out of the jurisdiction of this court, for the purpose of compelling him to perform military service.

"Wherefore your petitioner respectfully prays your honors to grant a writ of *habeas corpus* to be directed to Captain Charles Wheaton and his officers having charge of the said John McConologue, commanding him and them to bring the said John McConologue before your honors, to do, submit to and receive what the laws may require.                    James McConologue.

"In presence of Henry D. Hyde.

"Suffolk, ss.   Boston, November 15th, 1870.   Subscribed and sworn to this 15th day of November A. D. 1870, before me,

                    "Henry D. Hyde, Justice of the Peace."

his enlistment he deserted, and on the 19th day of August 1870 was reported by Captain Wheaton to the adjutant general of the army as a deserter, and was at the time registered as such; that on the 15th day of November he voluntarily returned to the office of said Wheaton, and was immediately ordered into custody as a deserter, by the verbal order of Captain Wheaton; that he was taken from such custody upon a writ of *habeas corpus* issued by this court on the 15th day of November, and upon hearing was discharged by this court; that at such hearing both parties appeared with counsel, and that no return was filed by the respondent; that on the 6th day of December the said Wheaton, as set forth in his return, did by verbal order arrest the said McConologue, by order of the secretary of war, and at the time of the serving of this writ claimed to hold him as a deserter, as set forth in his return, and was about transporting him to New York as a deserter at the time of the serving of the writ; that the said McConologue did receive from the United States one day's rations before deserting, but had received no money as pay, or uniform; and that the said McConologue offered to prove that at the time he was reported as a deserter the said Wheaton had been informed that he was a minor and that his parents objected to his enlistment; but the court ruled that the evidence was immaterial."

The writ in each case was in the form prescribed by the Gen. Sts. *c*. 144, § 6, and was issued by this court and signed by the clerk, and served by a deputy sheriff, in accordance with § 7.

*H. D. Hyde*, for the petitioner, upon the general question of the jurisdiction of the state courts, besides some of the cases cited in the opinion, referred to *Turner's case*, 5 Phila. 296; *Henderson's case*, Ib. 299; *Shorner's case*, 2 Carol. Law Repos. 55; *Merritt's case*, 5 Hall's Law Journal, 497; *Dobbs's case*, 21 How. Pract. 68; *Webb's case*, 24 How. Pract. 247.

*A. B. Gardner*, (of New York,) for the respondent, upon the same question, further cited *Keeler's case*, Hempst. 306; *Veremaitre's case*, 9 N. Y. ⌐eg. Obs. (May 1851) 129, 135, *Sifford's case*, 5 Am. Law Reg. 659; *McDonald's case*, 9 Am. Law Reg. 661; *Farrand's case*, 1 Abbott U. S. 140; *In re Neill*, 8 Blatchf. C. C. 156; *Roberts's case*, 2 Hall's Law Journal, 192

*Ex parte Rhodes*, 2 Wheeler Crim. Cas. 559; *State* v. *Zulich*, 5 Dutcher, 409; *Jordan's case*, 2 Am. Law Reg. (N. S.) 749 *Hopson's case*, 40 Barb. 34; *O'Connor's case*, 48 Barb. 258 *S. C.* 3 Abbott Pract. (N. S.) 137; *Rielly's case*, 2 Abbott Pract. (N. S.) 334; and many unreported cases; and to the point that the authority to discharge from enlistment on the ground of minority was exclusively in the secretary of war, U. S. Sts. 1864, *cc.* 13, 237; *Cline's case*, 1 Benedict, 338; *Stokes's case*, Ib. 341; *Riley's case*, Ib. 408; and *O'Connor's case*, *ubi supra*.

GRAY, J.    By the Gen. Sts. *c.* 144, § 1, " every person imprisoned or restrained of his liberty, except in the cases mentioned in the following section," (all of which are of persons held under judicial conviction or process,) " may, as of right and of course, prosecute a writ of *habeas corpus*, according to the provisions of this chapter, to obtain relief from such imprisonment or restraint, if it proves to be unlawful."    The person in whose custody the prisoner is found is required to make a full statement or return in writing, to the court or justice before whom the writ is returnable, of the authority and cause of the imprisonment or restraint, and at the same time to bring in the body of the prisoner. §§ 12–14.    The prisoner may deny any of the facts set forth in such return or statement, and may allege any other material facts; and the court or judge is bound " to proceed in a summary way to examine the causes of imprisonment or restraint, hear the evidence produced by any person interested or authorized to appear, both in support of such imprisonment or against it, and thereupon to dispose of the party as law and justice may require," and, if no legal cause is shown for the imprisonment or restraint, to discharge him therefrom. §§ 18, 28.

The jurisdiction of the state courts to discharge upon writ of *habeas corpus* minors illegally enlisted into the army of the United States is too well settled, by the concurrent opinions of the highest judicial authorities that have had occasion to pass upon it, and by a practice of more than half a century in accordance therewith, to be now disavowed, unless in obedience to an express act of congress, or to a direct adjudication of the supreme court of the United States.

The intrinsic importance of the question, and the ability and thoroughness with which it has been argued at the bar, have induced us to recur once more to the leading decisions upon this subject.

The earliest case reported is *Husted's case*, 1 Johns. Cas. 136, in 1799, in which an application to the supreme court of New York for a writ of *habeas corpus* to bring up a man detained in custody by a captain in the army of the United States, who claimed him as enlisted under the authority of the United States, was denied, against the opinions of Lansing, C. J., and Lewis, J., by the three other judges; but it appears by the report that " Radcliff, J., and Kent, J., were of opinion that the application ought to be refused on the ground that, if the facts stated were returned on the *habeas corpus*, it would be conclusive against his discharge; " and Benson, J., was the only judge who was of opinion that the court had no jurisdiction in the case. In *Ferguson's case*, 9 Johns. 239, in the same court in 1812, Chief Justice Kent indeed expressed an opinion that the state courts had no jurisdiction to discharge a person illegally enlisted; but his associates, including Mr. Justice Thompson, (afterwards chief justice of New York and a justice of the supreme court of the United States,) distinctly avoided the expression of any opinion upon that question, and as a matter of discretion refused to grant the writ, and left the petitioner to apply to the federal courts for relief. As Chief Justice Kent afterwards said in his Commentaries, " the supreme court did not decide the question, and the motion was denied on other grounds ; but subsequently, *in the matter of Stacy*, 10 Johns. 328," within the same year (in which he himself delivered the unanimous judgment of the court,) " the same court exercised a jurisdiction in a similar case, by allowing and enforcing obedience to the writ of *habeas corpus*. The question was therefore settled in favor of a concurrent jurisdiction in that case." 1 Kent Com. (6th ed.) 401. The same court again affirmed the jurisdiction in 1827 in *Carlton's case*, 7 Cowen, 471 ; and assumed it as unquestioned in *United States* v. *Wyngall*, 5 Hill, 16, while Judge Nelson (since a justice of the supreme court of the United States) was chief justice of that court. And in *Barlow's case*, 8 West-

ern Law Journal, 567, in 1850, Mr. Justice Woodruff (since appointed one of the circuit judges of the United States) said that since the decision in *Stacy's case* the jurisdiction had been constantly exercised in that state, " so constantly, indeed, that the revival of the objection at this day was the cause of some surprise."

In Pennsylvania and in Massachusetts the like jurisdiction was well established as long ago as 1813 or 1814, and has since been repeatedly asserted in published opinions of the full bench of the supreme court and in many unreported cases before single justices thereof sitting in chambers or at *nisi prius*. *Lockington's case*, 5 Hall's Law Journal, 92, 301 ; *S. C.* Brightly, 269. *Commonwealth* v. *Callan*, 6 Binn. 255. *Commonwealth* v. *Camac*, 1 S. & R. 87. *Commonwealth* v. *Fox*, 7 Penn. State, 336. *Commonwealth* v. *Wright*, 3 Grant, 437. *Commonwealth* v. *Harrison*, 11 Mass. 63. *Commonwealth* v. *Cushing*, Ib. 67. *Commonwealth* v. *Downes*, 24 Pick. 227. *Kimball's case*, 9 Law Reporter, 500. *Sims's case*, 7 Cush. 285, 309. *Sanborn* v. *Carleton*, 15 Gray, 399. And it has been sustained by the decisions and practice of the courts of last resort in other states. *Ex parte Mason*, 1 Murphy, 336. *State* v. *Dimick*, 12 N. H. 194. *Lanahan* v. *Birge*, 30. Conn. 438. *Disinger's case*, 12 Ohio State, 256. *Higgins's case*, 16 Wisc. 351.

The earliest reported judgments of the supreme courts of New York, Pennsylvania and Massachusetts, sitting in banc, in the *cases of Stacy, Lockington* and *Harrison*, above cited, derive additional weight from having been rendered upon full consideration and independently of each other.

The reasons in support of this jurisdiction are so clearly and strongly set forth by Chief Justice Tilghman of the supreme court of Pennsylvania, and by Mr. Justice Jackson of this court, in two of the earliest cases, that we deem it unnecessary to add anything to their arguments. The facts that neither of them is printed in any book of reports in common use, and that the jurisdiction has been long treated as so well established that its grounds are not fully stated in any of the later cases, justify us in quoting from them at some length.

*Lockington's case* was that of a man held by a marshal of the United States under the authority of the President, as an alien enemy. Upon a suggestion made in the return of the marshal, that a state judge had no authority to issue a writ of *habeas corpus* in such a case, Chief Justice Tilghman expressed himself as follows :

" It is to be observed that the authority of the state judges, in cases of *habeas corpus*, emanates from the several states, and not from the United States. In order to destroy their jurisdiction, therefore, it is necessary to show, not that the United States have given them jurisdiction, but that congress possess, and have exercised, the power of taking away that jurisdiction which the states have vested in their own judges. Our act of assembly directs that in all cases, ' where any person, not being committed or detained for any criminal or supposed criminal matter, shall be confined or restrained of his liberty, under any color or pretence whatsoever,' he shall be entitled to a writ of *habeas corpus*. Now, it is no answer to this law, to say that, being made before the present Constitution of the United States was established, it could not be intended to apply to cases arising under the Constitution. The people of Pennsylvania still remain citizens of the Commonwealth, as well as of the United States ; and it is of as much importance to them to be relieved from unlawful imprisonment under color derived from the United States, as from any other imprisonment. When the present Federal Constitution was adopted, the people were not easy until they had obtained an amendment declaring that the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, were reserved to the states respectively, or to the people. A writ of *habeas corpus* must therefore be issued, in all cases where the right to issue it has not been given up to the United States."

" But that is not all. It is a principle well established, that, even in cases where congress might assume an exclusive jurisdiction, the authority of the state remains until such a jurisdiction is assumed. There are many instances in which the powers of the United States are suffered to lie dormant; such as the power of establishing uniform laws on the subject of bankruptcies , and

while the power remains dormant, the several states regulate the subject. In subjects also within the jurisdiction of congress, when they do legislate, the authority of the states is taken away only so far as the law of the United States declares. This is exemplified in the act establishing the judicial courts of the United States, where it will be found that in some instances the courts of the United States are vested with an exclusive jurisdiction, but in many more they have jurisdiction concurrent with the courts of the several states. And although it is true that by the terms of the act the courts of the United States have only a concurrent jurisdiction, yet I apprehend the construction would have been the same if the express terms had been omitted. By the fourteenth section of the same act, power is given to the judges of the United States to grant writs of *habeas corpus* for the ' purpose of an inquiry into the cause of commitment; provided that they shall in no case extend to prisoners in jail, unless where they are in custody under, or by color of, the authority of the United States, or committed for trial before some court of the same, or are necessary to be brought into court to testify.' Now, if it had been intended to exclude the state judges, this is the place in which we might expect to find evidence of such intention; for the subject was full in the mind of the legislature, as appears by the care with which they restrained their own judges from interfering with commitments not under the authority of the United States."

" As to an attempt to take away from the state courts altogether the right of issuing a writ of *habeas corpus* in any case where a man pretends to justify an imprisonment under the authority of the United States, whenever the subject shall be brought before congress it will be found to be attended with very great, if not insuperable difficulties." " The inconvenience of clashing opinions between federal and state judges may sometimes be felt; but when I consider the situation of a Pennsylvanian, imprisoned unlawfully, by color of a pretended authority from the United States, on the banks of the Ohio or the shore of Lake Erie, with only one federal judge to whom he can apply, and that judge in the city of Philadelphia, I feel as little incli-

nation, as I have right, to surrender the authority of the Commonwealth." 5 Hall's Law Journal, 94 $\&$ seq.; Brightly, 273 $\&$ seq.

In the *case of Lewis*, which was of the enlistment of a minor, Mr. Justice Jackson, after referring to *Ferguson's case*, 9 Johns. 239, said : " It appears from that case, that the law of New York differs in one respect at least from the law of this state, inasmuch as the writ of *habeas corpus* there may be granted or refused in the discretion of the court; whereas it is here declared by our statute to be 'a writ of right, to which the citizens of this Commonwealth are, by the Constitution and law of the land, at all times entitled, to obtain relief from every wrongful imprisonment or unlawful restraint of personal liberty.' St. 1784, *c.* 72. The right thus solemnly declared and secured would be defeated, if the court on the return of the writ should refuse to examine the causes alleged in justification of the imprisonment. Indeed the very question raised in this case could not occur, until the court had so far examined the return as to see that the party was held at least under color of the authority of the United States. And can it be supposed that a mere color of authority, which perhaps on examination would appear to be wholly mistaken or unfounded, is sufficient to deprive a citizen of his personal liberty ? Supposing the laws for raising this army had been repealed, or that this soldier had been regularly discharged, and that the officer, from ignorance of the fact or from some less excusable motive, still detained the man under his command ; must this court remand the prisoner and leave him in such unlawful restraint, merely because his oppressor thinks proper to allege that he is acting under the authority of the United States ? The Constitution of the United States, and the laws made in pursuance thereof, are the supreme laws of the land, and have the same force and effect in this court as in the courts of the United States. Suppose, then, that the law under which this man is enlisted had expressly prohibited the enlistment under any circumstances of minors, or of any other particular description of persons ; when one of that description is brought before us on *habeas corpus*, and is claimed as a soldier by the party who holds him, are we not authorized, nay, are we not bound, to declare that such enlistment is void ?

" Suppose the Constitution itself had contained a prohibition like the one here supposed, and that congress should notwithstanding pass an act for the enlisting of minors; should we not be bound to declare that such act was void, and to discharge any minor enlisted under it ? It is then evident that, in order to do our duty under the statute of this Commonwealth before referred to, we must examine the whole case, both as to law and fact. If on such examination it appear that the party is lawfully detained, whether under the authority of this state or of the United States, we must remand him. But if the person to whom the writ is directed rely for his justification on a mistaken construction of the law, or on an act which is repealed or in any other way void; or if the facts are not duly substantiated which are necessary to bring the case within an existing law ; it is our duty to discharge the prisoner, although the officer should pretend, or really believe, that he was proceeding lawfully under the authority of the United States." 1 Carol. Law Repos. 49 & seq.

The existence of this power in the state courts has never been denied by the supreme court of the United States, nor, so far as we are informed, by any judge of that court. In *United States* v. *Bainbridge*, 1 Mason, 71, 86, Mr. Justice Story found it unnecessary to consider how far such a jurisdiction of the state courts could reach, and simply said, " Whenever that question shall arise, it will deserve very grave consideration." In *Stearns* v. *United States*, 2. Paine, 300, 310, Mr. Justice Thompson spoke of the jurisdiction to discharge upon *habeas corpus* a prisoner held by an officer of the United States by color or under pretext of the authority of the United States, as one which might be assumed or declined by the state courts at their discretion. Mr. Justice Nelson, in a charge to the grand jury, reported in 1 Blatchf. C. C. 635, 642, defined the extent of the jurisdiction of the state courts as follows : " It is proper to say, in order to guard against misconstruction, that I do not claim that the mere fact of the commitment or detainer of a prisoner by an officer of the federal government bars the issuing of the writ, or the exercise of power under it. Far from that. Those officers may be guilty of illegal restraints of the liberty of the citizen, the same as others, The

right of the state authorities to inquire into such restraints is not doubted; and it is the duty of the officer to obey the authority by making a return." And the only case in which he declared it to be the duty of a federal officer not to give up the prisoner upon a writ of *habeas corpus* from a state court was " wl en the prisoner is in fact held under process from a federal tribuna.." The opinions of Mr. Justice McLean in *Norris* v. *Newton*, 5 McLean, 92, and Mr. Justice Grier in *Ex parte Jenkins*, 2 Wallace, Jr. 521, were similarly limited. Nor do we understand the adjudication of the supreme court of the United States in the cases of *Ableman* v. *Booth* and *United States* v. *Booth*, 21 How. 506, as going any farther than this.

Booth was originally brought before a commissioner of the courts of the United States in Wisconsin upon a charge of having committed an offence against a law of the United States, and held to bail for his appearance before the next district court of the United States having jurisdiction of the offence, and, failing to give such bail, was committed by the commissioner to the custody of the marshal of the United States, and from such commitment was discharged on *habeas corpus* by the supreme court of the state. He was afterwards, in the district court of the United States, indicted, tried, convicted and sentenced to imprisonment for the offence, and was again discharged from this imprisonment by the supreme court of the state. In each instance, the imprisonment, from which he was discharged, was under a commitment upon judicial process of the United States, in the first case to compel him to stand his trial, and in the second to punish him after he had been found guilty. It is to such imprisonment only, that is to say, imprisonment upon judicial process of the United States, that the judgments of the supreme court, upon writs of error, reversing the judgments of the supreme court of the state, could apply; for no question arose in either of those cases, of the effect, as against a writ of *habeas corpus* from a state court, of the detention of a citizen by a mere executive officer, civil or military, of the United States, without color of judicial process or proceeding of any kind. Such was the whole effect attributed to that decision, after full consideration, and an inclination of opinion expressed in favor

of the concurrent jurisdiction of the state courts to discharge minors illegally enlisted, by Mr. Justice Dillon (now one of the circuit judges of the United States) in *Anderson's case*, 16 Iowa, 595, and by Mr. Stanbery as attorney general of the United States in *Gormley's case*, 12 Opinions of Attorneys General, 258. And Mr. Bates as attorney general gave an opinion to the same effect. 10 Ib. 146. The same line of distinction is preserved in our own statute of 1861, *c.* 91, § 3, which declares that "nothing contained in the statutes of this Commonwealth shall be construed to authorize the taking of any person by writ of *habeas corpus* out of the custody of the United States marshal or his deputy, holding him by legal and sufficient process, issued by any court or magistrate of competent jurisdiction ; provided, however, that this shall not affect the authority of the supreme judicial court or its justices, in accordance with the provisions of the Constitutions of the United States and of this Commonwealth, to investigate and determine upon the validity and legal effect of any process which may be relied on to defeat the writ, or any other matter properly arising."

Neither of the three remaining cases, cited by the learned counsel for the respondent, of which authentic reports have been furnished us, in which opinions adverse to the jurisdiction of the state courts in cases like the present have been expressed in the highest court of any state, required a decision upon the general question. The weight of *Spangler's case*, 11 Mich. 298, as a judicial precedent, it is not easy to estimate ; for no authorities except *Ableman* v. *Booth* were cited by either of the judges, and, while the chief justice and one of his associates expressed opinions that the court had no jurisdiction and that the writ of *habeas corpus* should be dismissed, the third judge limited his concurrence with them upon the question of jurisdiction to the facts of the case, this judge and the remaining member of the court, as well as the chief justice, expressed opinions that upon those facts, which each of them discussed at length, the prisoner was lawfully held by the military officer, and the judgment of the court was that the prisoner be remanded to his custody. *Kneedler* v. *Lane*, 45 Penn. State, 238, was a bill in equity, brought during the sus-

pension of the writ of *habeas corpus* in the recent civil war, by a
man drafted under the act of congress of 1863, *c.* 75, and was
decided upon the ground that that act was constitutional; and
Justices Strong and Agnew, who, together with Mr. Justice Reed,
made up the majority of the court upon the final decision, did not
concur with his *obiter dicta* on pp. 293, 301 *& seq.*, (cited by this
respondent,) but cautiously refrained from expressing any opinion
upon the general question of jurisdiction. pp. 295, 323.    In the
cases of *Willis & Armistead*, 38 Alab. 429, 458, the majority of
the supreme court of Alabama, differing from the chief justice,
expressed an opinion in favor of their jurisdiction to discharge on
*habeas corpus* a conscript who was not liable to enrolment on
account of his age or other like exemption, and remanded the
prisoner to the custody of the military officer upon distinct
grounds.

The other cases cited on either side at the argument were de-
cided by district judges of the United States, or by single judges
or lower courts of the states, and it would be superfluous to refer
to them in detail, because, in view of the many higher authorities
upon the subject, they can have no controlling influence upon our
decision on the general question.

It was argued for the respondent, that the acts of congress of
1864, *cc.* 13, 237, authorizing and directing the secretary of war
to discharge minors under the age of eighteen, enlisted without
the consent of their parents or guardians, took away by implica-
tion all power of any court to discharge on *habeas corpus* an en-
listed person upon account of his minority ; and in support of this
argument several decisions in New York were referred to.    But
in Massachusetts it has been uniformly held otherwise, by the
judges of this court, as well as of the federal courts ; and the
reasons have been well stated by Judge Lowell: "It has always
been the right and the duty of the war department to discharge
persons illegally enlisted."    "While the privilege of this writ
was suspended, as it was when these acts were passed, this was
he only remedy, and it still is often the most convenient; but
it would be contrary to all precedent to oust the jurisdiction of
the courts, in a matter involving the liberty of the citizen, by a

mere implication from the fact that the legislature has given the appropriate executive departments power to act in the premises, and that during a war, when there was, for the time, no other remedy." *In re McDonald*, 1 Lowell, 100, 106. See also, in addition to cases there cited, *Barlow's case*, 8 Western Law Journal, 587; *Gormley's case*, 12 Opinions of Attorneys General, 258, 266.

The act of congress of 1867, *c*. 28, providing that the courts and judges of the United States " shall have power to grant writs of *habeas corpus* in all cases where any person may be restrained of his or her liberty in violation of the Constitution or of any treaty or law of the United States," can no more impair or restrict the inherent jurisdiction of the courts of the several states, than the authority to issue writs of *habeas corpus*, conferred by the original judiciary act of 1789, *c*. 20, which was in force at the time of all the decisions to which we have referred.

In the light of those decisions, and of the reasons on which they are founded, we cannot avoid the conclusion that the justice of this court, before whom John McConologue was originally brought by writ of *habeas corpus*, had jurisdiction to inquire into the causes of his detention by Captain Wheaton, and, if they were found insufficient, to discharge him.

A minor's contract of enlistment is indeed voidable only and not void, and if, before a writ of *habeas corpus* is sued out to avoid it, he is arrested on charges for desertion, he should not be released by the court while proceedings for his trial by the military authorities are pending. *Dew's case*, 25 Law Reporter, 538. *Tyler* v. *Pomeroy*, 8 Allen, 480, 501. *Commonwealth* v. *Gamble*, 11 S. & R. 93. And it was argued that the fact that the petitioner had been registered and ordered into custody as a deserter before the suing out of the first writ of *habeas corpus* should be allowed the same effect.

But the decision upon that writ, after notice and full hearing, discharging him from the custody of Captain Wheaton, was an adjudication that he was not liable to be held as an enlisted soldier, and a conclusive determination of all questions of law and fact necessarily involved in that result. Any facts which the respondent deemed material upon that issue should have been

proved at that hearing, and any ruling in matter of law with which he was dissatisfied should have been then reserved. The judicial discharge of a prisoner upon *habeas corpus* conclusively settles that he was not liable to be held in custody upon the then existing state of facts. *Ex parte Milburn*, 9 Pet. 704, 710. *Mercein* v. *People*, 25 Wend. 64, and 3 Hill, 399. Nelson, C. J., in *Spalding* v. *People*, 7 Hill, 301, 304. *Betty's case*, before Shaw, C. J. 20 Law Reporter, 455. Gen. Sts. *c.* 144, § 29. Neither the effect of his having been previously registered and ordered into custody as a deserter, nor either of the other questions, discussed at the bar — whether his oath that he was of age should be deemed conclusive upon that point, or whether a minor more than eighteen years old could be lawfully enlisted without the consent of his parent or guardian — is therefore now open for our consideration.

The respondent having appeared and been heard in opposition to the first writ, his omission to file the formal return in writing required by the Gen. Sts. *c.* 144, § 12, cannot affect the conclusiveness of the adjudication thereon.

Nor is it material that the petition for the first writ was made by the prisoner's father, and that for the present writ by himself. An application for a writ of *habeas corpus* may be made either by the person imprisoned or by any one in his behalf, and a father or guardian may always sue out a writ of *habeas corpus* for his minor child or ward. Gen. Sts. *c.* 144, § 4. *Commonwealth* v. *Harrison*, 11 Mass. 63. *Commonwealth* v. *Downes*, 24 Pick. 227. *United States* v. *Anderson*, Cooke (Tenn.) 143. Neither the form of the writ, nor the effect of the discharge, is varied by the name in which the petition is presented.

The judgment upon the first writ, therefore, was a valid and conclusive adjudication that the *status* of the minor, at the time of rendering that judgment, was that of a citizen and not a soldier. Such being the case, he could not be subject to subsequent arrest or trial by a military officer or court. *Stacy's case*, 10 Johns. 328. *Ex parte Watkins*, 3 Pet. 193, 209. *Ex parte Milligan*, 4 Wallace, 2. And there is no proof of any new proceeding since commenced against him as a deserter. The despatch of

the secretary of war, a copy of which is annexed to the return, does not purport to be an order to arrest him as a step in such a proceeding, but simply "directs that he be arrested wherever found, and sent out of the state of Massachusetts." It is not an order to hold him for trial before a military court, but to take him out of the jurisdiction and beyond the reach of any civil court, state or federal, held within this Commonwealth.

<em>Prisoner discharged.</em>*

---

* At December term 1871 of the supreme court of the United States it was decided (the chief justice dissenting) that a state court had no authority to discharge upon writ of *habeas corpus* a minor even under eighteen years of age, held by an officer of the United States army under an enlistment made without the consent of his parent or guardian. *Tarble's case*, 13 Wallace, 397. The practice in this Commonwealth has since conformed to that decision.