(47 App. Div. 381.)

In re LEGGAT.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

SHERIFFS—DISCHARGE OF PRISONER—CONTEMPT—SHERIFF'S LIABILITY.
Since, under Code Civ. Proc. § 2017, a county judge has jurisdiction of habeas corpus proceedings, and his discharge of a prisoner on the ground that the commitment was void cannot be collaterally attacked, a sheriff was not guilty of contempt of the judge in releasing a prisoner held under a commitment from him, though the writ in the habeas corpus proceedings was not served on the sheriff, and he made no return thereto as required by Id. § 2026, and the formal order discharging the prisoner was not entered until the day following her release.

Appeal from surrogate's court, Westchester county.

Application by Laura Leggat to punish William V. Molloy, sheriff of Westchester county, for contempt in discharging Susan Slater Weeks from custody before entry of a final order of discharge. From an order declaring the sheriff guilty of contempt (61 N. Y. Supp. 1093), he appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Justus A. B. Cowles (Charles P. Cowles, on the brief), for appellant.
Jacob Marks, for respondent.

WOODWARD, J.   We are of opinion that the learned surrogate erred in reaching the conclusion that the sheriff of Westchester county, the appellant, was guilty of contempt of court, and that the order appealed from should be reversed.   On the 30th day of June, 1899, the petitioner instituted proceedings by an order to show cause before the surrogate of Westchester county why William V. Molloy, sheriff of the said county, should not be punished for a civil contempt of court, for discharging from the county jail one Susan Slater Weeks. This motion was duly heard, and on the 22d day of August, 1899, the surrogate handed down an opinion in which he held that the sheriff had been guilty of a civil contempt of court; and an order was subsequently made and entered adjudging the said William V. Molloy to be guilty of contempt of court, and imposing a fine of $250.   Susan Slater Weeks had been committed to the county jail, upon the order of the surrogate, for neglecting or refusing to comply with an order of the court directing the distribution of certain funds which had come into her possession as executrix, etc., of Lauretta Slater, deceased; and the alleged contempt of the appellant consists in having released the said Susan Slater Weeks from custody contrary to the provisions of the order of commitment.

In the view which we take of this question, it is not necessary to consider the details of the order of commitment, nor to inquire as to the jurisdiction of the surrogate, in a proper case, to make the order appealed from.   At the time of making the order appealed from, the commitment and order of the surrogate directing the imprisonment of Susan Slater Weeks had been judicially declared "void upon the face" by a court of competent jurisdiction.   That decision became the law of this case.   A judicial discharge of a prisoner upon habeas corpus conclusively settles that he was not liable to be held in custody upon the then existing state of facts.   McConologue's Case, 107 Mass. 154, 171.   If the commitment and order of the surrogate were void upon their face,—and this cannot be questioned on this appeal,—the sheriff could not be guilty of a civil contempt; for a void commitment is not a commitment at all, but a mere nullity. It is true, of course, that the sheriff is not called upon to question the commitment of a court of competent jurisdiction, but when this question has been reviewed on habeas corpus, and it has been judicially determined that the commitment is "void upon the face," there are no authorities in this state which sanction the contention that the sheriff is guilty of contempt of court in releasing the prisoner. Indeed, the learned surrogate, in his opinion, says that he has "no doubt that if the writ of habeas corpus had been served upon the sheriff, if he had made his return, and the order of the county judge had so recited, and also recited the giving of the notice as required by section 2038, and directed the discharge of the prisoner, the

62 N.Y.S.—14

sheriff would be justified in obeying the order, even though the notice had not been given to those interested in continuing the confinement"; but he urges that, as the order of the county judge contained no recitals showing the jurisdiction of the court, it was the duty of the sheriff to show the existence of facts giving jurisdiction to the county judge to make the order. The authorities relied upon by the learned surrogate for this proposition (Bullymore v. Cooper, 46 N. Y. 236, and Shaffer v. Riseley, 114 N. Y. 23, 20 N. E. 630) do not comprehend a matter of this character, and are not in point. Those cases arose under the provisions of the Code of Civil Procedure (chapter 17, tit. 1, art. 3) for the discharge of an imprisoned judgment debtor from imprisonment, and constituted an exception to the general rule that the writ of habeas corpus will not lie to review a final judgment or decree, or execution thereon, of any competent tribunal of civil or criminal jurisdiction, other than in the case of a commitment for an alleged contempt. 2 Kent, Comm. p. 29. In those cases the persons imprisoned had been given all the advantages of a trial. All the questions of law had been before the courts as completely as they could be on habeas corpus. But considerations of public policy moved the legislature to provide that, in cases where the imprisonment was not likely to result in advantage to the judgment creditor, the prisoner might be released from custody. To protect the judgment creditor, and to give jurisdiction to the court, it was made necessary by the statute that the petitioner should make a full statement of his resources, upon a sufficient notice to his creditors, etc.; and it was held by the courts that, this proceeding being in the nature of a privilege to the judgment debtor, it was incumbent on him to proceed according to the precise provisions of the statute. The judgment debtor had no rights under the law, except as he complied with the provisions of the statute; and it was due to judgment creditors that the sheriff should be held to a strict accountability for the safe custody of those intrusted to his care under the provisions of final judgments, in which all of the rights of the judgment debtor had been fully protected, and he was held to be bound to know, in the absence of the proper recitals in the order of the court releasing the judgment debtor, that all of the steps necessary to the acquirement of jurisdiction had been taken by the court. The writ of habeas corpus, on the other hand, is a writ of right. 2 Kent, Comm. 26. It is designed to give the person in confinement, or who is restrained of his liberty, an immediate opportunity to test the question of law involved in his imprisonment; or, as it is put in some of the state constitutions, the citizen is entitled to the privilege of this writ in the most "free, easy, cheap, expeditious, and ample manner." "And," says Kent, "the right is equally perfect in those states where such a declaration is wanting." See People v. Liscomb, 60 N. Y. 559. Not only are the courts given absolute jurisdiction, but the court or judge authorized to issue the writ is obliged to comply with a demand for the writ when properly made, under a penalty of $1,000. Section 2020, Code Civ. Proc. The county judge, being "authorized to perform the duties of a justice of the supreme court at chambers," is

clearly invested with jurisdiction in habeas corpus proceedings (section 2017, Code Civ. Proc.); and, having this general jurisdiction of the subject-matter, it is not for the sheriff to inquire whether the county court has erred in acquiring jurisdiction of the particular case. While the neglect of the formalities pointed out by the statute may afford grounds for reversing the decision of the county judge, it does not, under the rule prevailing in this state, subject the sheriff, who acts under the order of the court, to punishment at the hands of another tribunal for a contempt of court.

It is urged that the writ was not served upon the sheriff; that he did not make a return in writing, as seems to be required by section 2026 of the Code of Civil Procedure; that the formal order of the court dismissing the petitioner from custody was not filed until the day following the release; and that the sheriff acted without authority in taking Susan Slater Weeks from the jail, and releasing her from confinement. The undisputed facts appear to be that a petition, duly verified, was presented at a trial term of the county court held at White Plains on May 29, 1899, setting forth the cause of the imprisonment of Susan Slater Weeks, and praying that a writ of habeas corpus issue; that the county judge made an order granting the prayer of the petitioner, and directing the issuance of a writ of habeas corpus forthwith; that thereupon a writ of habeas corpus issued, in the usual form, directing the sheriff to immediately produce the body of Susan Slater Weeks, together with the cause of her imprisonment, before the county judge; that these papers were all regular and proper in form, and that they were all duly filed in the office of the county clerk of Westchester county on the 31st day of May, 1899; that on this day, while the court was in session, David H. Hunt, attorney for the petitioner, applied for the discharge of Susan Slater Weeks under the writ of habeas corpus, "and stated to the court that he had served notice on all the attorneys interested in her imprisonment, and that there was no appearance in opposition thereto"; that thereupon the county judge ordered that Susan Slater Weeks be brought before him, and Deputy Sheriff Moore, who was in attendance on the court, was directed to produce her; that Moore went to the jail, near at hand, obtained Mrs. Weeks, stopped at the sheriff's office, and obtained the order of commitment and the commitment from Deputy Sheriff Jarvis (the sheriff being absent, and knowing nothing of the proceeding until after the discharge of the prisoner), upon stating to Jarvis the direction of the county judge, returned to the court room, presented Mrs. Weeks at the bar of the court, and delivered to the clerk of the court the said order of commitment and the commitment, having written thereon the sheriff's indorsement, "Arrested April 8, 1899;" that soon afterwards the county judge stated in open court that the prisoner was discharged; that thereupon the clerk delivered to Deputy Sheriff Moore the order for commitment and the commitment, with the words indorsed thereon in the handwriting of the county judge, "Discharged May 31, 1899. Smith Lent, County Judge;" that the deputy sheriff then took Mrs. Weeks and the said papers back to the sheriff's office, where the necessary entries were made upon the books, and the prisoner was al-

lowed to depart; that the county judge then made the formal order of discharge in the habeas corpus proceeding, which bears date of May 31, 1899, in which it is distinctly stated that the order for commitment and the commitment were "void on the face"; and that this order was not entered of record with the county clerk until the following day. Whether or not it was necessary to formally serve the writ upon the sheriff, or whether the sheriff should have made a return in writing, or whether, the court having ordered the discharge of the prisoner, it was necessary that she should have been held in custody until the filing of the formal order, does not seem to us very material to be determined on this appeal. At the time this proceeding was instituted to punish the appellant for a civil contempt of court, there was an order of a court of competent jurisdiction declaring the order for commitment and the commitment "void on the face." Until that order was reversed or set aside in some direct proceeding, there was no legal commitment of the petitioner, and the right of the surrogate to punish for contempt of court on the part of a sheriff is limited to "disobedience of a lawful mandate of the court," or "for a misbehavior in his office or trust," or "for a willful neglect or violation of duty therein." None of these things could be done by the sheriff in respect to this matter if the commitment was void, and it has been judicially determined that it was "void on the face."

But, assuming the surrogate to have had jurisdiction to punish the appellant, we are of opinion that the sheriff was fully protected by the order of the court. The constitution of this state (section 6, art. 1) provides that no person shall "be deprived of life, liberty or property without due process of law"; and by section 4 of the same article it fixes a method by which to make this clause effective by declaring that "the privilege of the writ of habeas corpus shall not be suspended," etc. To effectuate the declared purposes of the constitution, the legislature has given to the justices of the supreme court and judges' of the county court jurisdiction in habeas corpus proceedings, and this jurisdiction is not restricted by any of the provisions of the Code of Civil Procedure in reference to this subject. The sections of the Code of Civil Procedure referred to in the opinion of the learned surrogate do not relate to the jurisdiction for the purpose of limiting it. Section 2017 tells what courts and officers shall have jurisdiction; section 2019 tells what the petitioner must do to bring the matter to the attention of the court, which is made necessary by the next section, which prescribes a penalty if the court refuse to issue the writ; and section 2026 tells what the person on whom the writ is served must do. This is not, however, for the benefit of the court, and in no wise modifies his jurisdiction. It is for the benefit of the prisoner, to enable him to have the facts before the court, that the question of the lawfulness of his incarceration may be determined. This plainly appears from the provisions of section 2028, which declares that, if the person neglects or refuses to make the proper return, the court must punish him in the manner pointed out until he complies with the requirement. In the case now before us the proceeding was in a measure informal. The petitioner had complied with all of the provisions necessary to demand the intervention of the court, and the

question of what steps were taken to secure her actual presence in the court, or the papers on which she was committed, is not material. The provisions of the Code were for her benefit, for the purpose of testing the legality of the papers under which she was held; and the court having the necessary facts before it, and that court alone having jurisdiction of the habeas corpus proceeding, any failure on the part of the sheriff to do his duty in making the return could give the surrogate no right to punish him for contempt in another proceeding.

Section 2031, Code Civ. Proc. provides that on the return of the writ the court or judge must immediately "examine into the facts alleged in the return, and into the cause of the imprisonment or restraint of the prisoner; and must make a final order to discharge him therefrom, if no lawful cause for the imprisonment or restraint or of the continuance thereof, is shown." It is urged that, as this order was not formally filed until the day following the informal discharge of the prisoner, the discharge was not according to law, and therefore in violation of the mandate of the surrogate. The court or judge, in the discharge of his duties, is presumed to have acted in accordance with the law; and all that he was required to do was to "make a final order," and this appears to have been done, though for some reason it was not filed until the following day. If the commitment was illegal, the sheriff had no authority to keep the petitioner in confinement. The final order, which was on file when this proceeding was commenced, declares that the commitment was void upon its face; and we are of opinion that the direction of the court that the prisoner be discharged, evidenced by the memorandum on the original papers, and supported by the formal order bearing date of the same day, was a sufficient warrant for the action of the deputy sheriff, and that the appellant cannot be punished as for a civil contempt because of the release of the petitioner. This is, we believe, in line with all of the authorities since the decision in the case of Savacool v. Boughton, 5 Wend. 170, where the rule was laid down that:

"Where the court issuing the process has general jurisdiction, and the process is regular on its face, the officer is not, though the party may be, affected by an irregularity in the proceedings. Where a judgment is vacated for an irregularity, the party is liable for the acts done under it; but the officer has a protection by reason of his regular writ."

In the carefully considered case of Lange v. Benedict, 73 N. Y. 12, 33, Judge Folger lays down the proposition that:

"Where jurisdiction over the subject is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other involved in the case, although upon the correctness of his determination in those particulars the validity of his judgment may depend."

In the later case of Woolsey v. Morris, 96 N. Y. 311, the court recognizes the rule in the leading case, that a—

"Ministerial officer is protected in the execution of process regular on its face, issued by a court, officer, or body having general jurisdiction of the subject-matter, or jurisdiction to issue it under special circumstances, although in fact jurisdiction of the person or subject-matter did not exist in the particular case. The rule is founded in public policy, for the protection of public officers charged with the duty of executing process, who generally cannot know, or

have not the means of ascertaining, whether the court, body, or officer issuing the process had acquired jurisdiction to render the judgment or to institute the proceeding upon which the process is founded."

In People v. Sturtevant, 9 N. Y. 263, the court say that the principle—

"Is of universal force that the order or judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be erroneous. The method of correcting error is by appeal, and not by disobedience. * * * We are not called upon to say whether the court decided right or not in granting the injunction, but whether it became their duty to decide that it should be granted or denied."

This is exactly the position in which we find ourselves in respect to the matter now before us, and, as the court say in the case cited:

"If such was their duty, then they had jurisdiction; and their decision, be it correct or erroneous, is the law of the case until it shall be reversed upon appeal, and can only be questioned upon a direct proceeding to review it, and not collaterally."

We are only to determine whether the petition before the county judge was sufficient to make it his duty to cause a writ of habeas corpus to issue. If it was his duty, then he had jurisdiction, and his decision, whether right or wrong, is the law of this case until it is regularly set aside; and it was the duty of the sheriff to obey the order, and to dismiss the petitioner from custody. If the parties interested in the imprisonment were not satisfied with the result of the habeas corpus proceeding, they were at liberty to take steps to review the decision of the county judge, and a reversal of the order would have brought the petitioner again into the custody of the sheriff; but there is no authority for the surrogate to punish a sheriff for contempt because of his obedience of an order of a court of competent jurisdiction, though that obedience should conflict with the lawful mandate of the surrogate; certainly not, as in the present instance, when that mandate has been judicially declared to be unlawful. See, generally, upon this question, Hathaway v. Holmes, 1 Vt. 405; McConologue's Case, 107 Mass. 154, 170; Roderigas v. Institution, 63 N. Y. 460, 474; Porter v. Purdy, 29 N. Y. 106, 113; Bovee v. King, 11 Hun, 250; Chegaray v. Jenkins, 5 N. Y. 376; Field v. Parker, 4 Hun, 342. The order appealed from should be reversed, with costs and disbursements.

Order reversed, with $10 costs and disbursements, and proceedings dismissed. All concur.